UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL JOHNSON, JOHN WATTS, | § | |
| JUSTO DAMIAN, JOHN GOAD, JUDITH | § | |
| GOAD, TOBY NGUYEN, LANNY | § | CASE NO. |
| SCHROEDER, JUDITH SCHROEDER, | § | |
| SUZANNE SISLEY, DEMETERIUS | § | |
| WILSON, PATREECE WILSON, MICHAEL | § | **JURY TRIAL DEMANDED** |
| KIDWELL, ALMA KIDWELL, EMILY | § | |
| BITLER, JOEL BITLER, ALEXANDER | § | |
| GARLAND, GERALD GIENGER, ANN | § | |
| GIENGER, MICHAEL KAPLAN, ANN | § | |
| KAPLAN, DAVID KEEPIN, JAMES BROCK, | § | |
| KEVIN ENCISO, TIMOTHY FAY, CARLOS | § | |
| FERNANDEZ, SEAN JENNINGS, JOHN | § | |
| LEWIS, DAVID ROMERO, MICHAEL | § | |
| SOLLA, JORDAN SPARKS, FRANCES | § | |
| BARAHONA, VICTOR BARAHONA, GUY | § | |
| COOPER, DERECK DAVIS, CHARLENE | § | |
| GARDNER, PHILIP ULRICH, JESSE | § | |
| STOLEBARGER, OTIS THOMPSON, | § | |
| REBECCA THOMPSON, EMMA WEBSTER, | § | |
| SARA HENSLEY, JENNIFER ALONGI, | § | |
| TODD SCHAFFERT, TUNG LY, SARA | § | |
| COLLINA, TOM COLLINA, CALVIN | § | |
| GENEREUX, ARTHUR TWEED, KATHRYN | § | |
| WINNER, BENJAMIN CRESSY, SUSAN | § | |
| GIORDANO, EMIL JACOB, PAULA | § | |
| MATCOVICI, JEFFREY KESLER, LINCOLN | § | |
| MIARA, KAREN STORY, DAVID | § | |
| FREEMAN, BAOHAN PAN, MARK | § | |
| SANSTEAD, JULIE SANSTEAD, | § | |
| LATIFFANY BISHOP, KYLE GUMP, | § | |
| JORDAN STEVENSON, PAUL MARSKE, | § | |
| HAROLD MEYER, RYAN SUPPES, JONAH | § | |
| GAFFNER, KIM KRESOVICH, SUSI | § | |
| ANTONIUK, THEODORE DYLEWSKI, | § | |
| SALLY DYLEWSKI, JEFFREY HANDEL, | § | |
| MICHAEL MURPHY, MARY O'HARA, | § | |
| LUKE GLOECKNER, GLENN GUARIN, | § | |
| LINDA GUARIN, REBECCA LASKODY, | § | |
| BRIAN POTTER, MARK RITTENHOUSE, | § | |
| CARL DAVIS, KENNETH AVDEEF, | § | |
| ZACHARY BAKER, VIRGINIA CANAVAN, | § | |

1

DON CANAVAN, LAWRENCE COPLEY,                §
ANNE COPLEY, JOHN DIBELLA, KATHY             §
PETERSON, PAUL RICHARD RODRIGUEZ,            §
JEFFREY TINGELSTAD, MARCO GUIDI,             §
KATHLEEN KENNEDY, JEREMY                     §
VERWEY, SIMON KOROWITZ, SCOTT                §
KINGSTON, THERESA LAFOND, SANDRA             §
LEE, CHIRAG PATEL, ANDREW THORN,             §
PETER CHAPA, RYAN DARK, ERIC GRAY,           §
JARRON MERRILL, NATHAN SMITH, JEFF           §
WOODHEAD, JILL WOODHEAD, BRUCE               §
JOHNSEN, STEPHEN PAGE, MARGARET              §
READ, TIMOTHY KING, ROBERT JOEL             §
DUNN, JAN DUNN, CLARENCE HOOP,               §
CLYDE HUNT, CORNELIA HUNT, EMMA              §
SCHMIDT, MATTHEW BARNES, DENNIS              §
BROWER, DANIEL GAGE, JAMES                   §
HOWARD, SUSAN HOWARD, ARTURO                 §
PADILLA, ALEJANDRO PAZOS, and NOAH           §
PEARSON,                                     §
                                             §
     PLAINTIFFS,                §
                                             §
V.                                           §
                                             §
GENERAL MOTORS LLC,  LG                      §
ELECTRONICS USA, INC., and LG                §
ENERGY SOLUTION MICHIGAN, INC.,              §
                                             §
    Defendants                     §

## **PLAINTIFFS' COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

    Plaintiffs Nathaniel Johnson, John Watts, Justo Damian, John Goad, Judith Goad, Toby

Nguyen, Lanny Schroeder, Judith Schroeder, Suzanne Sisley, DeMeterius Wilson, Patreece Wilson,

Michael Kidwell, Alma Kidwell, Emily Bitler, Joel Bitler, Alexander Garland, Gerald Gienger,

Ann Gienger, Michael Kaplan, Ann Kaplan, David Keepin, James Brock, Kevin Enciso, Timothy

Fay, Carlos Fernandez, Sean Jennings, John Lewis, David Romero, Michael Solla, Jordan Sparks,

Frances Barahona, Victor Barahona, Guy Cooper, Dereck Davis, Charlene Gardner, Philip Ulrich,

Jesse Stolebarger, Otis Bill Thompson, Rebecca Thompson, Emma Webster, Sara Hensley, Jennifer Alongi, Todd Schaffert, Tung Ly, Sara Collina, Tom Collina, Calvin Genereux, Arthur Tweed, Kathryn Winner, Benjamin Cressy, Susan Giordano, Emil Jacob, Paula Matcovici, Jeffrey Kesler, Lincoln Miara, Karen Story, David Freeman, Baohan Pan, Mark Sanstead, Julie Sanstead, Latiffany Bishop, Kyle Gump, Jordan Stevenson, Paul Marske, Harold Meyer, Ryan Suppes, Jonah Gaffner, Kim Kresovich, Susi Antoniuk, Theodore Dylewski, Sally Dylewski, Jeffrey Handel, Michael Murphy, Mary O'Hara, Luke Gloeckner, Glenn Guarin, Linda Guarin, Rebecca Laskody, Brian Potter, Mark Rittenhouse, Carl Davis, Kenneth Avdeef, Zachary Baker, Virginia Canavan, Don Canavan, Lawrence Copley, Anne Copley, John DiBella, Kathy Peterson, Paul Richard Rodriguez, Jeffrey Tingelstad, Marco Guidi, Kathleen Kennedy, Jeremy Verwey, Simon Korowitz, Scott Kingston, Theresa Lafond, Sandra Lee, Chirag Patel, Andrew Thorn, Peter Chapa, Ryan Dark, Eric Gray, Jarron Merrill, Nathan Smith, Jeff Woodhead, Jill Woodhead, Bruce Johnsen, Stephen Page, Margaret Read, Timothy King, Robert Joel Dunn, Jan Dunn, Clarence Hoop, Clyde Hunt, Cornelia Hunt, Emma Schmidt, Matthew Barnes, Dennis Brower, Daniel Gage, James Howard, Susan Howard, Arturo Padilla, Alejandro Pazos, and Noah Pearson ("Plaintiffs") file Plaintiffs' Complaint complaining of General Motors, LLC,  LG Electronics USA Inc. and LG Energy Solutions Michigan, Inc. and respectfully show the Court as follows:

## PARTIES

### Alabama Plaintiffs

### Nathaniel Johnson

1.      Plaintiff Nathaniel Johnson is a citizen of the State of South Carolina who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S04H4180878 on or about October 27, 2017 from Donohoo Chevrolet in Fort Payne, Alabama.  Plaintiff sold the vehicle in August 2023.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

2.      Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

3.      Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

4

4.      Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

5.      As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that he expected he would be getting when he purchased his vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

6.      As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a

catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

7.      At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

8.      Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**John Watts**

9.      Plaintiff John Watts is a citizen of the State of Mississippi who purchased a new 2018 Chevrolet Bolt EV bearing VIN 1G1FX6S0XJ4109512 on or about May 8, 2018 from Terry Thompson Chevrolet in Daphne, Alabama.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

10.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for

manufacturing quality vehicles.  In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

11.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

12.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

13.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice,

7

could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

14.     As a result of the battery defects and associated recalls, Plaintiff  suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

15.     At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased  the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

16.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Arizona Plaintiffs

### Justo Damian

17.     Plaintiff Justo Damian is a citizen of the State of California who purchased a used

2017 Chevrolet Bolt EV bearing VIN 1G1FX6S01H4183587 on or about September 10, 2021 from Robert Horne Ford in Apache Junction, Arizona.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

18.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

19.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

20.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on

multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

21.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

22.     As a result of the battery defects and associated recalls, Plaintiff  suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

23.     At the time of the purchase, Plaintiff was unaware of the nature and extent of the

battery defect. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

24. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated October 07, 2024, June 27, 2025 and June 27, 2025, respectively.

**John Goad and Judith Goad**

25. Plaintiffs John Goad and Judith Goad are citizens of the State of Arizona who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S00H4159930 on or about July 21, 2017 from Autonation Chevrolet Arrowhead in Peoria, Arizona. Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use. Plaintiffs always used the vehicle in the normal and expected manner.

26. Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

11

27.     Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

28.     Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

29.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a

12

substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

30.     As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

31.     At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective. Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

32.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Toby Nguyen**

33.     Plaintiff Toby Nguyen is a citizen of the State of Arkansas who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S05H4161771 on or about March 26, 2021 from Carvana in Tempe, Arizona. Plaintiff still owns the vehicle. Plaintiff also purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S05H4175251 on or about November 2, 2023 from Victory Chevrolet GMC in Paola, Kansas. Plaintiff totaled the vehicle in May 2024. Plaintiff

purchased the vehicles for personal, family or household use.  Plaintiff always used the vehicles in the normal and expected manner.

34.     Plaintiff made the decision to purchase the vehicles after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

35.     Prior to Plaintiff's purchases, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicles, including their range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicles would be capable of reaching their expected range without compromising their safety or exposing the vehicles to a risk of fire.    And Plaintiff reasonably expected that any defect with the batteries would be repaired or replaced in a timely manner.

36.     Plaintiff presented the subject vehicles to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicles to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after

14

being given multiple opportunities to do so.  The vehicles had less than 100,000 miles and were still covered by the express warranty when the vehicles were purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicles had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

37.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicles fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicles. Plaintiff was also unable to fully charge the vehicles was unable to charge them overnight, could not park the vehicles indoors after charging them pursuant to GM's recall notice, could not park the vehicles in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicles, suffered from "range anxiety" while using the vehicles, was unable to use the vehicles for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicles' batteries also caused a drop in the value of the vehicles.

38.     As a result of the battery defects and associated recalls, Plaintiff  suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicles. Had Plaintiff known that the Vehicles' range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolts.

39.     At the time of the purchases, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicles, Plaintiff would not have purchased  the vehicles or would have paid substantially less for it.  Because Plaintiff was unaware

of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisitions and suffered incidental, consequential and actual damages after the vehicle's acquisition

40.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated August 26, 2024, June 27, 2025 and June 27, 2025, respectively.

**Lanny Schroeder and Judith Schroeder**

41.     Plaintiffs Lanny Schroeder and Judith Schroeder are citizens of the State of Arizona who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S08H4182792 on or about May 26, 2021 from Van Chevrolet in Scottsdale, Arizona.   Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

42.     Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

43.     Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect.  Plaintiffs

reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiffs reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

44.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

45.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a

17

substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

46.     As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

47.     At the time of the purchase, Plaintiffs were unaware of the nature and extent of the battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

48.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Suzanne Sisley**

49.     Plaintiff Suzanne Sisley is a citizen of the State of Arizona who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S0XK4112017 on or about November 26, 2022 from Van Chevrolet in Scottsdale, Arizona.  Plaintiff sold the vehicle in March 2023.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

50.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

51.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

52.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was

defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

53.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

54.     As a result of the battery defects and associated recalls, Plaintiff  suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

55.     At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased  the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the

vehicle's acquisition

56.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**DeMeterius Wilson and Patreece Wilson**

57.     Plaintiffs DeMeterius Wilson and Patreece Wilson are citizens of the State of Arizona who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FW6S06J4113415 on or about September 1, 2020 from Scott Says Yes in Phoenix, Arizona.  Plaintiffs no longer own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

58.     Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

59.     Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be

capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

60.     Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

61.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

62.     As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

63.     At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

64.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Arkansas Plaintiffs

### Michael Kidwell and Alma Kidwell

65.     Plaintiffs Michael Kidwell and Alma Kidwell are citizens of the State of Arkansas who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S02K4142001 on or about June 21, 2019 from Chevrolet of Fayetteville in Fayetteville, Arkansas.  Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

66.     Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety

(including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

67. Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

68. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

69.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

70.     As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

71.     At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

72.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Colorado Plaintiffs

### Emily Bitler and Joel Bitler

73.     Plaintiffs Emily Bitler and Joel Bitler are citizens of the State of Colorado who purchased a new 2018 Chevrolet Bolt EV bearing VIN 1G1FX6S06J4141132 on or about October 31, 2018 from Dellenbach Motors in Fort Collins, Colorado.  Plaintiffs sold the vehicle in February 2022.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

74.     Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

75.     Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be

capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

76. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

77. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

78. As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

79.     At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective. Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

80.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated August 26, 2024, June 27, 2025 and June 27, 2025, respectively.

**Alexander Garland**

81.     Plaintiff Alexander Garland is a citizen of the State of Colorado who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S04H4165894 on or about October 18, 2017 from John Elway Chevrolet in Englewood, Colorado. Plaintiff still owns the vehicle. Plaintiff also purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S06H4190991 on or about March 17, 2018 from Fowler Chevrolet in Broomfield, Colorado. Plaintiff still owns the vehicle. Plaintiff purchased the vehicles for personal, family or household use. Plaintiff always used the vehicles in the normal and expected manner.

82.     Plaintiff made the decision to purchase the vehicles after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiff chose the Chevy

Bolt based primarily on the vehicles' represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicles' alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicles, Plaintiff relied on GM's warranty that the vehicles would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

83.     Prior to Plaintiff's purchases, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiff reasonably expected that the vehicles, including their range, would function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicles would be capable of reaching their expected range without compromising their safety or exposing the vehicles to a risk of fire.

84.     Plaintiff presented the subject vehicles to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicles to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicles had less than 100,000 miles and were still covered by the express warranty when the vehicle was purchased by Plaintiff and the batteries were defective at that time. Moreover, the vehicles had less than 100,000 miles and were still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective batteries within a reasonable time.

85.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicles fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicles. Plaintiff was also unable to fully charge the vehicles, was unable to charge them overnight, could not park the vehicles indoors after charging them pursuant to GM's recall notice, could not park the vehicles in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicles, suffered from "range anxiety" while using the vehicles, was unable to use the vehicles for longer trips because of the reduced range and had to use a substitute vehicles for longer trips because of the reduced range.  And the problems with the vehicles' batteries also caused a drop in the value of the vehicles.

86.     As a result of the battery defects and associated recalls, Plaintiff  suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicles. Had Plaintiff known that the Vehicles' range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolts.

87.     At the time of the purchases, Plaintiff was unaware that the vehicles and their batteries were defective.  Had Plaintiff known the true facts about the vehicles, Plaintiff would not have purchased  the vehicles or would have paid substantially less for them.  Because Plaintiff was unaware of the defective nature of the vehicles and their defective batteries, Plaintiff suffered overpayment damages at the time of the acquisitions and suffered incidental, consequential and actual damages after the vehicles' acquisition.

88.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated

August 26, 2024, June 27, 2025 and June 27, 2025, respectively.

**Gerald Gienger and Ann Gienger**

89.   Plaintiffs Gerald Gienger and Ann Gienger are citizens of the State of Colorado who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S03K4113786 on or about November 9, 2018 from Medved Chevrolet in Wheat Ridge, Colorado.  Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

90.   Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

91.   Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

92.   Plaintiffs presented the subject vehicle to GM's authorized repair facilities for

battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

93.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

94.     As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have

purchased the Bolt.

95.     At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

96.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Michael Kaplan and Ann Kaplan**

97.     Plaintiffs Michael Kaplan and Ann Kaplan are citizens of the State of Colorado who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S05K4114454 on or about November 14, 2022 from Echo Park in Centennial, Colorado.  Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

98.     Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle

would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

99.     Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect.  Plaintiffs reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiffs reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

100.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

101.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall

notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

102.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

103.    At the time of the purchase, Plaintiffs were unaware of the nature and extent of the battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased  the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

104.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## Connecticut Plaintiff

### David Keepin

105.    Plaintiff David Keepin is a citizen of the State of Connecticut who purchased a new

2019 Chevrolet Bolt EV bearing VIN 1G1FY6S07K4117338 on or about October 1, 2019 from O'Neill's Chevrolet in Avon, Connecticut.  Plaintiff traded the vehicle in September 2024.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

106.   Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

107.   Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

108.   Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities

failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

109. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

110. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

111. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have

purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

112.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Florida Plaintiffs**

**James Brock**

113.    Plaintiff James Brock is a citizen of the State of Florida who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S07H4178445 on or about October 13, 2019 from Carmax Auto Superstores, Inc. in Sanford, Florida.  Plaintiff traded the vehicle in February 2023. Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

114.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

115.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

116.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

117.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a

substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

118. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

119. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

120. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Kevin Enciso**

121. Plaintiff Kevin Enciso is a citizen of the State of Florida who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FZ6S05M4110694 on or about February 17, 2024 from Bomnin Chevrolet Dadeland in Miami, Florida. Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

40

122.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase

123.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner

124.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was

defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time

125.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle

126.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

127.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the

vehicle's acquisition.

128.  Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Timothy Fay**

129.  Plaintiff Timothy Fay is a citizen of the State of Florida who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S0XK4130570 on or about June 1, 2019 from Maus Chevrolet in Tampa, Florida.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

130.  Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

131.  Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable

43

of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

132.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

133.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

134.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

135.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

136.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 24, 2024, June 27, 2025 and June 27, 2025, respectively.

**Carlos Fernandez**

137.    Plaintiff Carlos Fernandez is a citizen of the State of Florida who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S09H4191357 on or about May 31, 2018 from Bomnin Chevrolet Dadeland in Miami, Florida.  Plaintiff no longer owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

138.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the

45

vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

139.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

140.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

141.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff

purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

142. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

143. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

144. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated October 28, 2024, June 27, 2025 and June 27, 2025, respectively.

47

**Sean Jennings**

145.    Plaintiff Sean Jennings is a citizen of the State of Florida who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S03K4100889 on or about September 2, 2019 from Starling Buick GMC Chevrolet in St. Cloud, Florida.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

146.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

147.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

148.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

48

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

149.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

150.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

49

151. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

152. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**John Lewis**

153. Plaintiff John Lewis is a citizen of the State of Florida who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S09H4176614 on or about January 1, 2018 from New Smyrna Beach Chevy in New Smyrna Beach, Florida. Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

154. Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of

50

purchase.

155.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

156.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

157.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle,

was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

158. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

159. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

160. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**David Romero**

161. Plaintiff David Romero is a citizen of the State of Florida who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S02K4116739 on or about December 31, 2019 from a Private Party in Orlando, Florida. Plaintiff still owns the vehicle. Plaintiff purchased the vehicle

for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

162.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

163.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

164.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still

covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

165.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.   And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

166.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

167.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment

damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

168.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Michael Solla**

169.    Plaintiff Michael Solla is a citizen of the State of Florida who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S0XH4178310 on or about September 2, 2017 from David Maus Chevrolet aka Seminole Chevrolet in Sanford, Florida.  Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

170.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

171.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants'

specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

172.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

173.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

174.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

175.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

176.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Jordan Sparks**

177.    Plaintiff Jordan Sparks is a citizen of the State of Florida who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S08H4136699 on or about June 1, 2024 from Pete Moore Chevrolet in Pensacola, Florida.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

178.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy

Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

179.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner

180.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by

the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time

181.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.   And the problems with the vehicle's battery also caused a drop in the value of the vehicle

182.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

183.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

184.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Georgia Plaintiffs

### Frances Barahona and Victor Barahona

185.    Plaintiffs Frances Barahona and Victor Barahona are citizens of the State of Georgia who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S0XK4117041 on or about November 25, 2023 from BMVW Cars in Union City, Georgia.  Plaintiffs still own the vehicle.  Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

186.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

187.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect.  Plaintiffs reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected

that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire. And Plaintiffs reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

188. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

189. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

190. As a result of the battery defects and associated recalls, Plaintiffs suffered an

ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

191.    At the time of the purchase, Plaintiffs were unaware of the nature and extent of the battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

192.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

### Guy Cooper

193.    Plaintiff Guy Cooper is a citizen of the State of Georgia who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S06H4188030 on or about September 2, 2023 from BMVW Cars in Union, Georgia.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

194.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including,

without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

195.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

196.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

197.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

198.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

199.     At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

200.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Dereck Davis**

201.    Plaintiff Dereck Davis is a citizen of the State of Georgia who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S06K4124245 on or about September 27, 2019 from Southtowne Motors of Newnan II Inc in Newnan, Georgia.  Plaintiff sold the vehicle in June 2021. Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

202.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

203.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of

fire.

204.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

205.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

206.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle.

Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

207.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

208.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Charlene Gardner**

209.    Plaintiff Charlene Gardner is a citizen of the State of Georgia who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S01K4110188 on or about November 24, 2018 from Nalley Chevrolet in Union City, Georgia.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

210.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and

67

to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

211.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

212.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

213.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

214. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

215. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

216. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Philip Ulrich**

217.    Plaintiff Philip Ulrich is a citizen of the State of Georgia who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S06H4174853 on or about July 4, 2019 from Carvana in Atlanta, Georgia.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

218.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

219.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

220.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

221.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

222.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

71

223.     At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

224.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 24, 2024, June 27, 2025 and June 27, 2025, respectively.

**Idaho Plaintiffs**

225.     Plaintiff Jesse Stolebarger is a citizen of the State of Idaho who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S06K4102281 on or about April 19, 2022 from Dave Smith Motors in Kellogg, Idaho.  Plaintiff traded the vehicle in April 2022.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

226.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of

72

defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

227.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect. Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.     And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

228.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

229.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice,

could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

230.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

231.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

232.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Otis Thompson and Rebecca Thompson**

233.    Plaintiffs Otis Thompson and Rebecca Thompson are citizens of the State of Idaho who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S0XK4116930 on or about

74

March 20, 2019 from Dave Smith Motors in Kellogg, Idaho. Plaintiffs still own the vehicle. Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use. Plaintiffs always used the vehicle in the normal and expected manner.

234. Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

235. Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

236. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after

being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

237.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

238.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

239.    At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective. Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiffs were unaware

76

of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

240.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## Indiana Plaintiffs

### Emma Webster and Sara Hensley

241.    Plaintiffs Emma Webster and Sara Hensley are citizens of the State of Indiana who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FW6S08J4111312 on or about April 6, 2024 from John Jones Auto Group in Corydon, Indiana.  Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

242.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

243.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect.  Plaintiffs reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiffs reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

244.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

245.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle,

were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

246.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

247.    At the time of the purchase, Plaintiffs were unaware of the nature and extent of the battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

248.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Iowa Plaintiffs

### Jennifer Alongi and Todd Schaffert

249.    Plaintiffs Jennifer Alongi and Todd Schaffert are citizens of the State of Iowa who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S04K4105189 on or about August 7, 2023 from Mills Chevrolet in Davenport, Iowa.  Plaintiffs still own the vehicle.  Plaintiffs

purchased the vehicle for personal, family or household use. Plaintiffs always used the vehicle in the normal and expected manner.

250. Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

251. Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect. Plaintiffs reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations. Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire. And Plaintiffs reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

252. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after

being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

253.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

254.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

255.    At the time of the purchase, Plaintiffs were unaware of the nature and extent of the battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware

of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

256.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Kansas Plaintiff

### Toby Nguyen

257.     Plaintiff Toby Nguyen is a citizen of the State of Arkansas who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S05H4175251 on or about November 2, 2023 from Victory Chevrolet GMC in Paola, Kansas.  Plaintiff totaled the vehicle in May 2024.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

258.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

259.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or

other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff

reasonably expected that the vehicle, including its range, would be able to function normally in

accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that

the vehicle would be capable of reaching its expected range without compromising its safety or

exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the

battery would be repaired or replaced in a timely manner.

260.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for

battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on

multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities

failed to repair the battery defect or replace the defective battery within a reasonable time after

being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still

covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was

defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by

the express warranty when GM failed to provide an adequate repair or replacement for the

defective battery within a reasonable time.

261.    As a result of the battery defects, recalls and modifications, the estimated range on

Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff

purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice,

could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced

significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle,

was unable to use the vehicle for longer trips because of the reduced range and had to use a

substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

262.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

263.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

264.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated August 26, 2024, June 27, 2025 and June 27, 2025, respectively.

**Louisiana Plaintiff**

**Tung Ly**

265.    Plaintiff Tung Ly is a citizen of the State of Maryland who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S03K4113304 on or about March 14, 2019 from Leson Chevrolet in Harvey, Louisiana.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected

manner.

266.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

267.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.   Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.   Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

268.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.   Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.   The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was

defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

269.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

270.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

271.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages

after the vehicle's acquisition.

272.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 24, 2024, June 27, 2025 and June 27, 2025, respectively.

**Maryland Plaintiffs**

**Sara Collina and Tom Collina**

273.     Plaintiffs Sara Collina and Tom Collina are citizens of the State of Washington DC who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S08K4108292 on or about October 20, 2018 from Donald Walker in Silver Spring, Maryland.  Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

274.     Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

275.     Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants'

specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

276.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

277.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

88

278. As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

279. At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective. Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

280. Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Calvin Genereux**

281. Plaintiff Calvin Genereux is a citizen of the State of North Carolina who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FW6S05K4144723 on or about April 10, 2021 from Passport BMW in Suitland, Maryland. Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

282. Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiff chose the Chevy

Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

283. Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect. Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire. And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

284. Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by

the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

285.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

286.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

287.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

91

288.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Arthur Tweed**

289.     Plaintiff Arthur Tweed is a citizen of the State of South Carolina who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S02K4103084 on or about December 1, 2018 from Orr Family Motor in Baltimore, Maryland.   Plaintiff still owns the vehicle.   Plaintiff purchased the vehicle for personal, family or household use.   Plaintiff always used the vehicle in the normal and expected manner.

290.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

291.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.   Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.   Plaintiff reasonably expected that the vehicle would be capable

of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

292.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

293.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

294.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

93

the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

295.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

296.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Kathryn Winner**

297.    Plaintiff Kathryn Winner is a citizen of the State of Maryland who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S01K4127070 on or about June 19, 2021 from Criswell Chevrolet in Gaithersburg, Maryland.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

298.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the

94

vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

299.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect. Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

300.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

301.    As a result of the battery defects, recalls and modifications, the estimated range on

95

Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

302.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

303.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

304.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Massachusetts Plaintiffs**

305.    Plaintiff Benjamin Cressy is a citizen of the State of Massachusetts who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FX6S06J4112925 on or about May 21, 2022 from 1A Auto Sales in Walpole, Massachusetts.  Plaintiff totaled the vehicle in January 2023. Plaintiff also purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S08K4122645 on or about January 7, 2023 from 1A Auto Sales in Walpole, Massachusetts.  Plaintiff still owns the vehicle. Plaintiff purchased the vehicles for personal, family or household use.  Plaintiff always used the vehicles in the normal and expected manner.

306.    Plaintiff made the decision to purchase the vehicles after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicles, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

307.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicles, including their range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicles would be capable of reaching its expected range without compromising its safety or

exposing the vehicle to a risk of fire. And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

308. Plaintiff presented the subject vehicles to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicles to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicles had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the batteries were defective at that time. Moreover, the vehicles had less than 100,000 miles and were still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective batteries within a reasonable time.

309. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicles fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicles. Plaintiff was also unable to fully charge the vehicles, was unable to charge them overnight, could not park the vehicles indoors after charging it pursuant to GM's recall notice, could not park the vehicles in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicles, suffered from "range anxiety" while using the vehicles, was unable to use the vehicles for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicles' batteries also caused a drop in the value of the vehicle.

310. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicles. Had Plaintiff known that the Vehicles' range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolts

311.    At the time of the purchases, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicles, Plaintiff would not have purchased the vehicles or would have paid substantially less for them.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicles' acquisitions.

312.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Susan Giordano

313.    Plaintiff Susan Giordano is a citizen of the State of Massachusetts who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S00H4173441 on or about October 9, 2017 from Quirk Chevrolet in Braintree, Massachusetts.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

314.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the

vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

315.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

316.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

317.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff

purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

318.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

319.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

320.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Emil Jacob and Paula Matcovici**

321.    Plaintiffs Emil Jacob and Paula Matcovici are citizens of the State of Massachusetts who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FW6S05K4102231 on or about October 10, 2018 from Quirk Chevrolet in Braintreen, Massachusetts.  Plaintiffs returned the vehicle after the lease expired in October 2021.  Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

322.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

323.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

324.     Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

325.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

326.     As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

327.     At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

328.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Jeffrey Kesler**

329.     Plaintiff Jeffrey Kesler is a citizen of the State of Massachusetts who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S09H4170067 on or about March 11, 2022 from Ralph's Auto Center in New Bedford, Massachusetts.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

330.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.

In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

331.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

332.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

333.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

334.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

335.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

336.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 24, 2024, June 27, 2025 and June 27, 2025, respectively.

**Lincoln Miara**

337.    Plaintiff Lincoln Miara is a citizen of the State of Massachusetts who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S03K4112752 on or about March 31, 2019 from Mirak Chevy in Arlington, Massachusetts.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

338.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

339.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

340.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

341.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

342.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

343.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

344.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Karen Story**

345.    Plaintiff Karen Story is a citizen of the State of Massachusetts who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S00H4160868 on or about March 19, 2018 from Central Chevrolet in West Springfield, Massachusetts.  Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

346.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of

109

defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

347.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

348.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

349.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced

significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

350.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

351.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

352.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## Minnesota Plaintiffs

### David Freeman

353.    Plaintiff David Freeman is a citizen of the State of Minnesota who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S01K4121790 on or about December 14, 2019 from

Marthaler Auto Group in Glenwood, Minnesota.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

354.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

355.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

356.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after

being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

357.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

358.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

359.     At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware

of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

360.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Baohan Pan

361.    Plaintiff Baohan Pan is a citizen of the State of Maryland who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S07K4111567 on or about January 13, 2024 from KeySavvy, Inc. in Big Lake, Minnesota.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

362.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

363.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff

reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

364.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

365.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a

substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

366.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

367.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

368.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Mark Sanstead and Julie Sanstead**

369.    Plaintiffs Mark Sanstead and Julie Sanstead are citizens of the State of Minnesota who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S07K4111813 on or about January 1, 2020 from the West Metro Area, Minnesota.  Plaintiffs traded the vehicle in August 2021. Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

116

370.     Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.    Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

371.     Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

372.     Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by

117

the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

373.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

374.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

375.    At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

118

376.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Missouri Plaintiffs**

377.    Plaintiff Latiffany Bishop is a citizen of the State of Missouri who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S07H4175870 on or about September 6, 2023 from Don Brown Chevrolet in St. Louis, Missouri.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

378.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

379.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or

exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

380.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

381.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

382.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle.

Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased for an extended length of time in order to mitigate the fire

risk, Plaintiff would not have purchased the Bolt

383.     At the time of the purchase, Plaintiff was unaware of the nature and extent of the

battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have

purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware

of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the

time of the acquisition and suffered incidental, consequential and actual damages after the

vehicle's acquisition

384.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and

LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated

February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Kyle Gump and Jordan Stevenson**

385.     Plaintiffs Kyle Gump and Jordan Stevenson are citizens of the State of Missouri

who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FW6S09J4108841 on or about

January 23, 2020 from Mayse Automotive in Aurora, Missouri.  Plaintiffs still own the vehicle.

Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the

vehicle in the normal and expected manner.

386.     Plaintiffs made the decision to purchase the vehicle after considering GM's

representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the

Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety

(including, without limitation, its ability to be free from a risk of battery fire and safely charged to

121

100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

387.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

388.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

389.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when

they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

390.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

391.    At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

392.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Paul Marske**

393.    Plaintiff Paul Marske is a citizen of the State of Missouri who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S00K4142725 on or about May 23, 2020 from Autohaus BMW in St. Louis, Missouri.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

394.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

395.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

396.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

397.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.   And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

398.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

399.     At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

400.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Harold Meyer**

401.     Plaintiff Harold Meyer is a citizen of the State of Arkansas who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S09H4168545 on or about July 1, 2020 from Thompson Sales in Springfield, Missouri.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

402.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of

purchase.

403.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

404.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

405.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle,

was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

406.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

407.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

408.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Ryan Suppes**

409.    Plaintiff Ryan Suppes is a citizen of the State of Kansas who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S01H4189733 on or about February 21, 2017 from McCarthy Chevrolet in Lee's Summit, Missouri.  Plaintiff sold the vehicle in April 2024.  Plaintiff

purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

410.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

411.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

412.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still

129

covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

413.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

414.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

415.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment

damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

416.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Nebraska Plaintiff

### Jonah Gaffner

417.    Plaintiff Jonah Gaffner is a citizen of the State of Nebraska who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S09H4153088 on or about June 01, 2021 from Sid Dillon Chevrolet in Fremont, Nebraska.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

418.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

419.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected

that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

420.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

421.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

422.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

423.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

424.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

<u>**New Mexico Plaintiff**</u>

<u>**Kim Kresovich**</u>

425.    Plaintiff Kim Kresovich is a citizen of the State of New Mexico who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S08K4101309 on or about September 1, 2018 from Chevrolet of Santa Fe in Santa Fe, New Mexico.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

426.    Plaintiff made the decision to purchase the vehicle after considering GM's

133

representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

427.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

428.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the

defective battery within a reasonable time.

429.   As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

430.   As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

431.   At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

432.   Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and

LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## New York Plaintiffs

### Susi Antoniuk

433.    Plaintiff Susi Antoniuk is a citizen of the State of New York who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S06K4113135 on or about March 29, 2019 from Grand Prize Chevrolet in Nanuet, New York.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

434.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

435.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of

136

fire.

436.   Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

437.   As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

438.   As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle.

Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

439.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

440.    Plaintiff still owns the vehicle. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Theodore Dylewski and Sally Dylewski**

441.    Plaintiffs Theodore Dylewski and Sally Dylewski are citizens of the State of New York who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S01H4158642 on or about November 1, 2017 from Maguire Chevrolet in Ithaca, New York.  Plaintiffs returned the vehicle after the lease expired in November 2020.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

442.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge

indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

443.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

444.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

445.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to

charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

446.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

447.    At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

448.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Jeffrey Handel**

449.    Plaintiff Jeffrey Handel is a citizen of the State of New York who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S06H4157327 on or about November 3, 2023 from Bridgeland Auto Dealers in Bridgeport, New York.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

450.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

451.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

452.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

453.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

454.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

142

or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

455.     At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

456.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Michael Murphy**

457.     Plaintiff Michael Murphy is a citizen of the State of New York who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FX6S09J4130173 on or about November 21, 2022 from East Hills Chevrolet in Douglaston, New York.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

458.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.

In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

459.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

460.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

461.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

462.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

463.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

464.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Mary O'Hara**

465.    Plaintiff Mary O'Hara is a citizen of the State of New York who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S05H4158563 on or about August 20, 2020 from Hartway Motors Chevrolet in Medina, New York.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

466.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

467.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

468.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

469.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

470.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

471.     At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

472.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## North Carolina Plaintiffs

### Luke Gloeckner

473.     Plaintiff Luke Gloeckner is a citizen of the State of North Carolina who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S05H4182848 on or about March 9, 2024 from Wayne Thomas Chevrolet in Asheboro, North Carolina.  Plaintiff totaled the vehicle. Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

474.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of

defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

475.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

476.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

477.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice,

could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

478.   As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt

479.   At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

480.   Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Linda Guarin and Glenn Guarin**

481.   Plaintiffs Linda Guarin and Glenn Guarin are citizens of the State of North Carolina who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S09K4147714 on or about

December 1, 2019 from Fields Chrysler in Asheville, North Carolina. Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use. Plaintiffs always used the vehicle in the normal and expected manner.

482. Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

483. Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

484. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after

being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

485.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

486.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

487.    At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware

152

of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

488.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Rebecca Laskody**

489.    Plaintiff Rebecca Laskody is a citizen of the State of North Carolina who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S06K4114091 on or about September 27, 2019 from Sir Walter Chevrolet Company in Raleigh, North Carolina.  Plaintiff still owns the vehicle.   Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

490.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

491.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected

that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

492.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

493.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

494. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

495. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

496. Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## Ohio Plaintiffs

### Brian Potter

497. Plaintiff Brian Potter is a citizen of the State of Ohio who purchased a new 2018 Chevrolet Bolt EV bearing VIN 1G1FW6S02J4111418 on or about January 7, 2020 from Montgomery Chevrolet Co in Cincinnati, Ohio. Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

498.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

499.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.   Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.   Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

500.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.   Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.   The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.   Moreover, the vehicle had less than 100,000 miles and was still covered by

156

the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

501.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

502.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

503.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

504.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Mark Rittenhouse**

505.     Plaintiff Mark Rittenhouse is a citizen of the State of Ohio who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S05H4181227 on or about December 29, 2020 from Shafer Auto Group in Columbus, Ohio.  Plaintiff sold the vehicle in July 2021.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

506.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

507.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable

of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

508.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

509.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

510.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

511.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

512.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Oklahoma Plaintiff

513.    Plaintiff Carl Davis is a citizen of the State of Oklahoma who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S09K4112607 on or about July 11, 2020 from Carvana in Oklahoma City, Oklahoma.  Plaintiff traded the vehicle in July 2021.   Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

514.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the

160

vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

515.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

516.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

517.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff

purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

518.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

519.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

520.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Oregon Plaintiffs**

**Kenneth Avdeef**

521.    Plaintiff Kenneth Avdeef is a citizen of the State of Oregon who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S06K4105680 on or about July 24, 2023 from BMW of Salem in Salem, Oregon.  Plaintiff still owns the vehicle.    Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

522.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

523.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

163

524.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

525.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

526.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

527.   At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

528.   Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Zachary Baker**

529.   Plaintiff Zachary Baker is a citizen of the State of Oregon who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S06H4177884 on or about October 5, 2020 from Royal Moore Auto Center in Hillsboro, Oregon.   Plaintiff still owns the vehicle.     Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

530.   Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.

In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

531.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

532.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

533.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice,

could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

534.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

535.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

536.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated May 31, 2024, June 27, 2025 and June 27, 2025, respectively.

**Virginia Canavan and Don Canavan**

537.    Plaintiffs Virginia Canavan and Don Canavan are citizens of the State of Oregon who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S04H4183165 on or about

June 12, 2021 from Kendall Chevrolet LLC in Eugene, Oregon. Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use. Plaintiffs always used the vehicle in the normal and expected manner.

538. Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

539. Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect. Plaintiffs reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations. Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire. And Plaintiffs reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

540. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities

failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

541.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that Plaintiffs expected to get when Plaintiffs purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

542.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

543.    At the time of the purchase, Plaintiffs were unaware of the nature and extent of the battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have

169

purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

544.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Lawrence Copley and Anne Copley**

545.    Plaintiffs Lawrence Copley and Anne Copley are citizens of the State of Washington who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S00H4186500 on or about December 15, 2017 from McLoughlin Chevrolet in Milwaukie, Oregon.  Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

546.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

547.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

548.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

549.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a

substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

550. As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

551. At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective. Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

552. Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**John DiBella**

553. Plaintiff John DiBella is a citizen of the State of Washington who purchased a new 2018 Chevrolet Bolt EV bearing VIN 1G1FX6S05J4117498 on or about June 1, 2018 from Wentworth Chevrolet in Portland, Oregon. Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

554.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

555.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.   Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.   Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

556.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.   Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.   The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.   Moreover, the vehicle had less than 100,000 miles and was still covered by

the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

557.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.   And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

558.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

559.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.   Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.   Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

174

560.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Kathy Peterson**

561.    Plaintiff Kathy Peterson is a citizen of the State of Oregon who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S05K4116556 on or about October 1, 2019 from Wilsonville Chevy in Wilsonville, Oregon.  Plaintiff still owns the vehicle.    Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

562.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

563.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable

of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

564.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

565.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

566.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

567.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

568.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Paul Richard Rodriguez**

569.    Plaintiff Paul Richard Rodriguez is a citizen of the State of Oregon who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S02H4129621 on or about November 1, 2016 from Wentworth Chevrolet in Portland, Oregon. Plaintiff still owns the vehicle. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

570.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range. Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the

177

vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

571. Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

572. Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

573. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff

purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

574.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

575.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

576.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Jeffrey Tingelstad**

577.    Plaintiff Jeffrey Tingelstad is a citizen of the State of Washington who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1GBJF1G08K4130770 on or about February 24, 2023 from Platt Auto Group Inc in Portland, Oregon.  Plaintiff still owns the vehicle.   Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

578.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

579.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

580. Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

581. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

582. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

583.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

584.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Pennsylvania Plaintiffs**

**Mario Guidi**

585.    Plaintiff Marco Guidi is a citizen of the State of Virginia who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S04K4108478 on or about March 9, 2021 from Wright Nissan in Wexford, Pennsylvania.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

586.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and

182

to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

587.   Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

588.   Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

589.   As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff

purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

590.   As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

591.   At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

592.   Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Kathleen Kennedy**

593.    Plaintiff Kathleen Kennedy is a citizen of the State of Pennsylvania who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S0XH4159744 on or about July 22, 2017 from Stocker Chevy Dealership in State College, Pennsylvania.  Plaintiff traded the vehicle in June 2021.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

594.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

595.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

596.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

597.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.   And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

598.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

599.     At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

600.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Jeremy Verway**

601.     Plaintiff Jeremy Verwey is a citizen of the State of Pennsylvania who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S0XH4186605 on or about January 11, 2022 from Danis Auto in Philadelphia, Pennsylvania.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

602.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of

defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

603.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

604.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

605.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice,

could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

606.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

607.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

608.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Rhode Island Plaintiff**

**Simon Korowitz**

609.     Plaintiff Simon Korowitz is a citizen of the State of Massachusetts who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S02H4163853 on or about December 1, 2017 from Paul Masse in East Providence, Rhode Island.  Plaintiff returned the vehicle after the lease expired in December 2020.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

610.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

611.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

190

612.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

613.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

614.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

615.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

616.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## South Carolina Plaintiff

### Scott Kingston

617.    Plaintiff Scott Kingston is a citizen of the State of South Carolina who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FW6S06K4104523 on or about October 2, 2019 from Woodruff Chevrolet in Woodruff, South Carolina.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

618.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and

192

to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

619.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

620.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

621.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

622.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

623.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

624.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## Tennessee Plaintiffs

### Theresa Lafond

625.    Plaintiff Theresa Lafond is a citizen of the State of Tennessee who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S0XK4118273 on or about July 1, 2019 from Serra Bartlett in Memphis, Tennessee.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

626.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

627.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

628.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

629.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

630.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

631.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

632.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Sandra Lee**

633.    Plaintiff Sandra Lee is a citizen of the State of Tennessee who purchased a used 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S04K4109307 on or about January 1, 2024 from Chip Geppi Hybrid and Electric Car Sales LLC in Franklin, Tennessee.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

634.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.

197

In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

635.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

636.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

637.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

638.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

639.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

640.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Chirag Patel**

641.     Plaintiff Chirag Patel is a citizen of the State of Indiana who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FW6S06J4117867 on or about January 21, 2021 from Genesis Auto Brokers in Brentwood, Tennessee.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

642.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

643.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

644.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

645.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

646.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

647.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

648.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Andrew Thorn**

649.    Plaintiff Andrew Thorn is a citizen of the State of Ohio who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S00H4189593 on or about January 18, 2022 from Genesis Auto Brokers in Brentwood, Tennessee.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

650.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.

In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

651.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

652.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

653.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

654.   As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

655.   At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

656.   Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated August 26, 2024, June 27, 2025 and June 27, 2025, respectively.

**Utah Plaintiffs**

**Peter Chapa**

657.    Plaintiff Peter Chapa is a citizen of the State of Utah who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FW6S05J4138693 on or about August 3, 2019 from Ken Garff Chevrolet in American Ford, Utah.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

658.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

659.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

660.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for

battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

661.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

662.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

663.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

664.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Ryan Dark**

665.    Plaintiff Ryan Dark is a citizen of the State of Utah who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S03H4182427 on or about December 29, 2019 from a Private Party in Farmington, Utah.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

666.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.

In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

667. Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

668. Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

669. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice,

could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

670.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

671.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

672.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated October 28, 2024, June 27, 2025 and June 27, 2025, respectively.

**Eric Gray**

673.    Plaintiff Eric Gray is a citizen of the State of Utah who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S08H4163971 on or about March 9, 2021 from National

Auto Plaza in Sandy, Utah.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

674.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

675.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

676.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities

210

failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

677.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

678.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

679.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have

purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

680.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated August 26, 2024, June 27, 2025 and June 27, 2025, respectively.

**Jarron Merrill**

681.    Plaintiff Jarron Merrill is a citizen of the State of Utah who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S07H4159682 on or about April 10, 2020 from Family Auto Sales in Pleasant Grove, Utah.  Plaintiff sold the vehicle in May 2023.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

682.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

683.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or

212

other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

684.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

685.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the

vehicle's battery also caused a drop in the value of the vehicle.

686.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

687.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

688.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Nathan Smith**

689.    Plaintiff Nathan Smith is a citizen of the State of Utah who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S08K4107224 on or about September 21, 2019 from Young Chevrolet in Layton, Utah.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

690.    Plaintiff made the decision to purchase the vehicle after considering GM's

214

representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

691.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

692.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the

defective battery within a reasonable time.

693.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

694.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

695.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

696.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and

LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Jeff Woodhead and Jill Woodhead**

697.    Plaintiffs Jeff Woodhead and Jill Woodhead are citizens of the State of Utah who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S03H4147855 on or about October 27, 2021 from Rands Auto in North Salt Lake, Utah.  Plaintiffs still own the vehicle. Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

698.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

699.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect.  Plaintiffs reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiffs reasonably expected that any defect with

217

the battery would be repaired or replaced in a timely manner.

700.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

701.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

702.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle.

218

Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

703.    At the time of the purchase, Plaintiffs were unaware of the nature and extent of the battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

704.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

### Vermont Plaintiffs

### Bruce Johnsen

705.    Plaintiff Bruce Johnsen is a citizen of the State of Vermont who purchased a new 2018 Chevrolet Bolt EV bearing VIN 1G1FW6S00J4140576 on or about September 13, 2018 from Alderman's Chevrolet in Rutland, Vermont.  Plaintiff traded the vehicle in February 2021.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

706.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the

219

vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

707.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

708.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

709.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff

purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

710.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

711.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

712.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Stephen Page**

713.    Plaintiff Stephen Page is a citizen of the State of Vermont who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S08H4182147 on or about March 17, 2018 from Shearer Chevrolet in South Burlington, Vermont.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

714.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

715.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

716.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired

222

or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

717.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.   And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

718.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

223

719.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

720.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Margaret Read and Timothy King**

721.    Plaintiffs Margaret Read and Timothy King are citizens of the State of Vermont who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S00K4112031 on or about June 25, 2020 from Lamoille Valley Chevrolet aka McMahon Chevrolet in Hyde Park, Vermont. Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

722.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery,

at the time of purchase.

723.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

724.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

725.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle,

225

were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

726. As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

727. At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective. Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

728. Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

## Virginia Plaintiffs

### Robert Joel Dunn and Jan Dunn

729. Plaintiffs Robert Joel Dunn and Jan Dunn are citizens of the State of North Carolina who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S04H4140137 on or about December 1, 2017 from Hendrick Chevrolet in Virginia Beach, Virginia. Plaintiffs traded the

vehicle in January 2021.  Plaintiffs purchased the vehicle for personal, family or household use.
Plaintiffs always used the vehicle in the normal and expected manner.

730.    Plaintiffs made the decision to purchase the vehicle after considering GM's
representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the
Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety
(including, without limitation, its ability to be free from a risk of battery fire and safely charged to
100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge
indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing
quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle
would be free of defects in materials and workmanship, including in the vehicle's electric battery,
at the time of purchase.

731.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or
other representatives informed Plaintiff of the Defective Battery.  Plaintiffs reasonably expected
that the vehicle, including its range, would function normally in accordance with Defendants'
specifications and representations.   Plaintiffs reasonably expected that the vehicle would be
capable of reaching its expected range without compromising its safety or exposing the vehicle to
a risk of fire.

732.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for
battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired
or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on
multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities
failed to repair the battery defect or replace the defective battery within a reasonable time after
being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still

covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

733.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

734.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

735.    At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment

damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

736.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated August 26, 2024, June 27, 2025 and June 27, 2025, respectively.

**Clarence Hoop**

737.    Plaintiff Clarence Hoop is a citizen of the State of Virginia who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S00K4101690 on or about August 1, 2018 from Pohanka Chevrolet in Chantilly, Virginia.  Plaintiff totaled the vehicle in April 2021.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

738.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

739.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants'

specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

740.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

741.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

742.    As a result of the battery defects and associated recalls, Plaintiff suffered an

230

ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

743.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

744.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Clyde Hunt and Cornelia Hunt**

745.    Plaintiffs Clyde Hunt and Cornelia Hunt are citizens of the State of Virginia who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S06K4126948 on or about March 13, 2019 from Ted Britt Chevy in Sterling, Virginia.  Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

746.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety

(including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

747. Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery. Plaintiffs reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations. Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

748. Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced. Plaintiffs also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so. The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time. Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

749. As a result of the battery defects, recalls and modifications, the estimated range on

Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

750.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

751.    At the time of the purchase, Plaintiffs were unaware that the vehicle and its battery were defective.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the defective nature of the vehicle and its defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

752.    Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Emma Schmidt**

753.    Plaintiff Emma Schmidt is a citizen of the State of Illinois who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S0XH4141130 on or about April 26, 2021 from a Private Party in Alexandria, Virginia.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

754.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

755.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

756.     Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

757.     As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

758.     As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

759.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

760.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**West Virginia Plaintiff**

**Matthew Barnes**

761.    Plaintiff Matthew Barnes is a citizen of the State of Ohio who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FZ6S0XK4123311 on or about February 24, 2020 from Harry Green Chevrolet Inc. in Clarksburg, West Virginia.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

762.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and

236

to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

763.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.  Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

764.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

765.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

766.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

767.    At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

768.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated October 07, 2024, June 27, 2025 and June 27, 2025, respectively.

**<u>Wisconsin Plaintiffs</u>**

**<u>Dennis Brower</u>**

769.     Plaintiff Dennis Brower is a citizen of the State of Wisconsin who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S00H4179159 on or about June 2, 2023 from River Motors in Portage, Wisconsin.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner. Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.

770.     Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

771.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

772.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

773.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

774.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire,

240

or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

775.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

776.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Daniel Gage**

777.    Plaintiff Daniel Gage is a citizen of the State of Wisconsin who purchased a used 2018 Chevrolet Bolt EV bearing VIN 1G1FX6S09J4110151 on or about September 4, 2021 from CarMax Auto Superstores, Inc. in Milwaukee, Wisconsin.  Plaintiff traded the vehicle in April 2024.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

778.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.

241

In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

779.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

780.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

781.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge

it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

782.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

783.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

784.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**James Howard and Susan Howard**

785.    Plaintiffs James Howard and Susan Howard are citizens of the State of Wisconsin

who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S07H4185041 on or about January 1, 2021 from Tom's Sales and Service in Cornell, Wisconsin.  Plaintiffs still own the vehicle.  Plaintiffs purchased the vehicle for personal, family or household use.  Plaintiffs always used the vehicle in the normal and expected manner.

786.    Plaintiffs made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiffs chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles.  In purchasing the vehicle, Plaintiffs relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

787.    Prior to Plaintiffs' purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs of the nature and extent of the battery defect.  Plaintiffs reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiffs reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.   And Plaintiffs reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

788.    Plaintiffs presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiffs also presented the vehicle to an authorized GM dealership on

multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiffs and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

789.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiffs' vehicle fell significantly below the range that they expected they would be getting when they purchased the vehicle. Plaintiffs were also unable to fully charge the vehicle, were unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, were unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

790.    As a result of the battery defects and associated recalls, Plaintiffs suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of their bargain after purchasing the Vehicle. Had Plaintiffs known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiffs would not have purchased the Bolt.

791.    At the time of the purchase, Plaintiffs were unaware of the nature and extent of the

245

battery defect.  Had Plaintiffs known the true facts about the vehicle, Plaintiffs would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiffs were unaware of the nature and extent of the defective battery, Plaintiffs suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

792.     Plaintiffs provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Arturo Padilla**

793.     Plaintiff Arturo Padilla is a citizen of the State of Texas who purchased a new 2017 Chevrolet Bolt EV bearing VIN 1G1FW6S08H4188532 on or about November 7, 2021 from Ubersox Used Car Superstore in Monroe, Wisconsin.  Plaintiff still owns the vehicle.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

794.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

795.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or

246

other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

796.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

797.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a

substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

798.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

799.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

800.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

**Alejandro Pazos**

801.    Plaintiff Alejandro Pazos is a citizen of the State of Wisconsin who purchased a new 2019 Chevrolet Bolt EV bearing VIN 1G1FY6S08K4133371 on or about April 27, 2019 from Bergstrom Chevrolet Cadillac Inc in Appleton, Wisconsin.  Plaintiff sold the vehicle in April 2021. Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

248

802.    Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.   Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

803.    Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the Defective Battery.   Plaintiff reasonably expected that the vehicle, including its range, would function normally in accordance with Defendants' specifications and representations.   Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or exposing the vehicle to a risk of fire.

804.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.   Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.   The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.   Moreover, the vehicle had less than 100,000 miles and was still covered by

the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

805. As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range. And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

806. As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

807. At the time of the purchase, Plaintiff was unaware that the vehicle and its battery were defective. Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defective nature of the vehicle and its defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition.

250

808.     Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated February 28, 2025, June 27, 2025 and June 27, 2025, respectively.

**Noah Pearson**

809.     Plaintiff Noah Pearson is a citizen of the State of Wisconsin who purchased a used 2017 Chevrolet Bolt EV bearing VIN 1G1FX6S08H4177947 on or about March 29, 2021 from Napleton Chevrolet Columbus in Columbus, Wisconsin.  Plaintiff traded the vehicle in March 2023.  Plaintiff purchased the vehicle for personal, family or household use.  Plaintiff always used the vehicle in the normal and expected manner.

810.     Plaintiff made the decision to purchase the vehicle after considering GM's representations about the vehicle, including the reported 238 mile range.  Plaintiff chose the Chevy Bolt based primarily on the vehicle's represented range, the vehicle's alleged safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility (including the vehicle's ability to charge overnight, to charge indoors and to be parked indoors when fully charged), and GM's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on GM's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery, at the time of purchase.

811.     Prior to Plaintiff's purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff of the nature and extent of the battery defect.  Plaintiff reasonably expected that the vehicle, including its range, would be able to function normally in accordance with Defendants' specifications and representations.  Plaintiff reasonably expected that the vehicle would be capable of reaching its expected range without compromising its safety or

exposing the vehicle to a risk of fire.    And Plaintiff reasonably expected that any defect with the battery would be repaired or replaced in a timely manner.

812.    Plaintiff presented the subject vehicle to GM's authorized repair facilities for battery repairs or remedies on numerous occasions in attempts to have the battery defect repaired or the battery replaced.  Plaintiff also presented the vehicle to an authorized GM dealership on multiple occasions for service, maintenance or repairs. GM and its authorized repair facilities failed to repair the battery defect or replace the defective battery within a reasonable time after being given multiple opportunities to do so.  The vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery was defective at that time.  Moreover, the vehicle had less than 100,000 miles and was still covered by the express warranty when GM failed to provide an adequate repair or replacement for the defective battery within a reasonable time.

813.    As a result of the battery defects, recalls and modifications, the estimated range on Plaintiff's vehicle fell significantly below the range that Plaintiff expected to get when Plaintiff purchased the vehicle. Plaintiff was also unable to fully charge the vehicle, was unable to charge it overnight, could not park the vehicle indoors after charging it pursuant to GM's recall notice, could not park the vehicle in a garage or carport pursuant to GM's recall notice, experienced significantly reduced range with the vehicle, suffered from "range anxiety" while using the vehicle, was unable to use the vehicle for longer trips because of the reduced range and had to use a substitute vehicle for longer trips because of the reduced range.  And the problems with the vehicle's battery also caused a drop in the value of the vehicle.

814.    As a result of the battery defects and associated recalls, Plaintiff suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct

the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle's range was achieved only at the risk of a catastrophic fire, or that the range would be decreased for an extended length of time in order to mitigate the fire risk, Plaintiff would not have purchased the Bolt.

815.    At the time of the purchase, Plaintiff was unaware of the nature and extent of the battery defect.  Had Plaintiff known the true facts about the vehicle, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.  Because Plaintiff was unaware of the nature and extent of the defective battery, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the vehicle's acquisition

816.    Plaintiff provided Defendants General Motors LLC, LG Electronics USA, Inc. and LG Energy Solution Michigan, Inc. with pre-suit notice and an opportunity to cure by letters dated July 11, 2024, June 27, 2025 and June 27, 2025, respectively.

## Defendants

817.    Defendant General Motors LLC ("GM") is a Delaware Limited Liability Company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265. GM designed, manufactured, distributed and marketed he Chevy Bolt vehicles that are the subject of this suit.  GM failed to disclose the defective batteries in the subject vehicles and actively concealed the defects.  Rather than properly addressing the defective batteries, GM issued a series of half-hearted half-measures that severely limited Plaintiffs' use of their vehicles, deprived Plaintiffs of the benefit of their bargain and greatly reduced the resale or trade-in value of their vehicles.

818.    Defendant LG Electronics USA, Inc. ("LGEUSA") is a Delaware corporation with

253

its principal place of business at 111 Sylvan Ave., Englewood Cliffs, New Jersey. LGEUSA worked with LGESM to design, produce and manufacture the defective electric batteries in the subject Chevy Bolt vehicles.  Acting in concert with GM, LGEUSA failed to disclose the defective batteries in the subject vehicles and actively concealed the defects.

819.    Defendant LG Energy Solution Michigan Inc. ("LGESM") is a Delaware corporation with its principal place of business at 1 LG Way, Holland, Michigan that has facilities in Troy, Hazel Park and Holland, Michigan.  LGESM worked with LGEUSA to design, produce and manufacture the defective electric batteries in the subject Chevy Bolt vehicles.  Acting in concert with GM, LGESM failed to disclose the defective batteries in the subject vehicles and actively concealed the defects.

## <u>VENUE AND JURISDICTION</u>

820.    The Court has diversity jurisdiction because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000 for each Plaintiff exclusive of interest and costs.

821.    This Court also has original jurisdiction to hear this case by virtue of 15 U.S.C. § 2310(d)(1)(A), the Magnuson-Moss Warranty Act, conferred under 28 U.S.C. § 1131. The amount in controversy exceeds $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.  The amount of any individual claim of any individual plaintiff is not less than the sum or value of $25.00.  The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

822.    This Court has personal jurisdiction over GM because GM is headquartered in this District, and because a substantial part of the events, omissions, or misrepresentations giving rise to these claims occurred in and emanated from this District.

823.     This Court has personal jurisdiction over LGEUSA because a substantial part of the events, omissions, or misrepresentations giving rise to these claims occurred in and emanated from this District and because it carried on a continuous and systemic part of its general business within the state of Michigan by working with GM to build the defective battery components and to supply core parts of the battery systems and/or EV motors to GM.

824.     This Court has personal jurisdiction over LGESAM because a substantial part of the events, omissions, or misrepresentations giving rise to these claims occurred in and emanated from this District and because it has continuous and systemic business within the state through its facilities in Troy, Hazel Park and Holland, Michigan.

825.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events, transactions, and conduct giving rise to the claims occurred in and emanated from this District. Further, GM is headquartered and transacts business in this District and LGESMI has a significant presence in this District through its facilities in Troy and Hazel Park.

## **FACTUAL ALLEGATIONS**

826.     GM markets and sells the Chevrolet Bolt, a front-motor, five-door, all-electric, plug-in hatchback. This action arises out of GM's failure to disclose and then adequately repair a uniform and widespread defect in the 60 kWh 350 V lithium-ion battery (hereinafter the "Defective Battery") in the Chevrolet Bolt that has led to numerous safety recalls and guidance from GM that imposes highly restrictive limitations on consumers' use of the vehicles. The defect causes the high voltage battery to overheat when charged to full or nearly full capacity, which can result in catastrophic and destructive fires, resulting in an unreasonable safety risk to the drivers and passengers of vehicles equipped with the Defective Battery. These vehicles (hereinafter "Defective

Vehicles" or "Vehicles") are the 2017–22 model year Chevrolet Bolt EVs and 2022 Chevrolet Bolt EUVs (hereinafter "Chevy Bolt" or "Bolt").

### A. Development and Production of the Defective Vehicles.

827. GM introduced the Chevy Bolt EV concept in the 2015 Detroit Auto Show and presented it as "a vision for an affordable, long-range all-electric vehicle designed to offer more than 200 miles of range starting around $30,000."

828. On January 6, 2016, General Motors Chair and CEO Mary Barra formally unveiled the 2017 Chevy Bolt and touted the Vehicle's 200-plus mile range and comparatively low charging time required to reach 80 percent capacity, noting that "the Bolt EV can actually give you time back." Highlighting their EV experience derived from the similarly named Chevy Volt, GM partnered with LGEUSA and LGESM to develop and manufacture "an all-new cell and battery pack to offer more than an estimated 200 miles of range."

829. The Bolt was GM's version of an all-electric vehicle, competing with emerging all-electric vehicle lines promoted by new market entrants like Tesla, Nissan, and BMW. It quickly garnered a number of accolades, including the 2017 Motor Trend Car of the Year, North American Car of the Year, 2017 Green Car of the Year, and Automobile Magazine 2017 All Star awards. These awards touted the Bolt's range and cost—"the $30,000 . . . Bolt EV cut[] by more than half what an electric car with 238 miles range would have cost [in 2015]." Green Car Reports stated that the "most important thing about the Bolt EV" was "how far you can go on a single charge," noting that the 2017 Bolt offered "the range of a Tesla, for roughly half the price." The Bolt was lauded as "the 200-mile-range EV with cool connectivity that people can actually afford."

830. Range is a key consideration for purchasers and lessees of electric vehicles. It takes substantially longer to charge an electric vehicle than it does to fill up a tank of gas, and a fully

charged electric vehicle cannot travel as far on a single charge as most gas-powered vehicles can travel on a full tank of gas. The impressive range of the Bolt was advertised as being the result of an "unprecedented" partnership between GM on the one hand and LG Chem, Ltd. and its subsidiaries, including LGESM and LGEUSA (collectively referred to as "LG").   Defendants described GM and LG's "partner[ship] on critical components" and the "joint planning and research" that "brought the Chevrolet Bolt EV to reality." With the "blend [of] expertise" the "[e]ngineers considered different architectures, electric driving ranges and performance options" before settling on the final specifications for the Bolt.

831.    LG also supplied more than 10 components for the Bolt EV, including the electric battery cells and pack—LG was touted as helping to achieve "the key element in driving down costs" be developing the battery. The LG and GM partnership "encompassed supplying components for the Bolt EV and marked the first time that GM integrated a full EV component supplier so early in vehicle development. … GM will partner with [LG] to leverage its own engineering with [LG] to develop unique strategic systems and components.  Both LG and GM boasted about their partnership and its development of the Chevy Bolt and its batteries.

### B.    Defendants' Marketing to Defective Vehicle Owners and Lessees Emphasized the Battery Power and Range of the Chevy Bolt.

832.    Range is critical to the success of an all-electric vehicle. Car and Driver Magazine describes range as "the all-important stat"—because electric vehicles "can't be driven as far on a single charge as most gas-powered cars can go on a tank of fuel" and because electric vehicle batteries "can't be rejuiced in the five minutes it takes to top up a car's tank at a gas station." Because battery charging takes more time than refilling a gasoline tank, an all-electric vehicle's usefulness is directly related to the distance the automobile can travel before needing a recharge.

Therefore, electric car buyers particularly rely on manufacturer representations regarding how far the automobile can travel on a single charge.

833.    Electric vehicles like the Bolt have important environmental and financial advantages over conventional vehicles with internal combustion engines. Significantly, all-electric vehicles do not produce any of the tailpipe emissions—such as nitrogen  oxides and other smog-forming pollutants, other pollutants harmful to human health, and greenhouse gases such as carbon dioxide and methane—that are produced by vehicles with internal combustion engines. The lack of tailpipe emissions means that electric vehicles theoretically help improve air quality, improve public health, and reduce the overall ecological damage caused by driving personal vehicles. This benefit is especially significant in states where most electricity is generated from sources other than coal-fired plants. In addition to the environmental benefits, in general, the cost of electricity to charge an electric vehicle is considerably less than the cost of fueling with gasoline or diesel.

834.    Range and charging ability are two primary considerations of consumers that decide to purchase an electric vehicle. The 2017, 2018, and 2019 Bolt EV Owner's Manuals state that charging the Battery from a standard 120-volt AC electrical outlet for an hour would yield about 4–6 miles of driving range. If the Battery were completely depleted, it would take more than 50 hours to fully recharge at that rate. For this reason, many Bolt owners and lessees install "Level Two" 240-volt charging stations at their residences. Although faster, 240-volt chargers still provide only about 25 miles of driving range per hour of charging and take nearly 10 hours to fully charge from fully depleted. Necessarily, then, the distance one can drive on a fully-charged battery without stopping to recharge the battery (the "battery range" or "range") is one of the most critical factors to consider in purchasing any all-electric vehicle.

835.     GM was aware of this consideration when marketing the Chevy Bolt. At the time of its release, the Chevy Bolt was marketed as having a travel range of at least 238 miles without recharging. Defendants have consistently made that same representation to consumers since they started marketing the Bolt to the general public. GM went to great lengths in its attempt to demonstrate a 238-mile range, including taking a Car and Driver writer on a test drive "from Monterey to Santa Barbara, California, that spanned approximately 240 miles on coastal highways."

836.     This marketing was particularly important for GM because around the same time as the release of the Bolt, Tesla released a comparable compact electric vehicle—the Tesla Model 3. Both vehicles advertised a range of over 200 miles on a single charge, making some of the "first [electric vehicles] that could conceivably function as a family's lone car." The Model 3, however, advertised a significantly faster charging time than the Bolt—the Bolt's fastest charging option, the direct-current fast-charging capability, does not come standard with the Bolt and costs consumers an extra $750, and the Bolt takes about twice as long to fast-charge as the Model 3.

837.     The Bolt's slower charging time, combined with limited access to charging stations, meant that consumers would not be able to make longer trips with the Bolt without significant planning. The inconvenience of charging combined with the slower charging time of the Bolt when compared to its direct competitors made every additional mile of the Bolt's range critically important to consumers.

838.     GM repeatedly emphasized the Bolt's purported range in its marketing. For example, GM's pressroom released this statement about the launch of the Chevy Bolt:

> Chevrolet promised to offer the first affordable electric vehicle with 200 miles or more of range and will exceed those expectations when the 2017 Bolt EV goes on sale later this year. With the vehicle's EPA-estimated range of 238 miles, owners can expect to

259

go beyond their average daily driving needs — with plenty of range to spare — in the 2017 Bolt EV.

At the time of the 2017 Chevy Bolt's release, GM published a specifications sheet disclosing that the Vehicle was able to maintain a driving range of an estimated 238 miles. The accompanying "product information" fact sheet regarding the 2017 Bolt confirmed that it offered an estimated 238 miles of range. The same was true for the 2018 Chevy Bolt's release, in which GM published the same specifications sheet disclosing the Vehicle's 238-mile battery range, and further reiterated the 238-mile range on its product information fact sheet.

839.    GM further emphasized the range of the Bolt in a number of advertisements, like this ad from The Washington Post in June 2017, which prominently asks consumers to "begin a long-distance relationship, now":



840.    GM touted the Chevy Bolt's Battery as being "where it all starts," and advertised an energy capacity of 60 kWh, which GM said allowed drivers to travel an EPA-estimated 238

miles on a single full charge. An example of one such advertisement touting the Bolt's battery capabilities appears below:



GM also displayed the range in a commercial from 2017:



841.    One of the Bolt's first three customers stated in a GM press release that it was "the range and technology" that attracted him to the Bolt. After making its initial deliveries of the 2017 Bolt to its very first customers at the end of 2016, GM issued a press release that quoted a

California customer who replaced a competing electric car model: "The range and technology attracted me to the Bolt. . . . I look forward to the longer drives I can make compared to the [BMW] i3 that I owned."  For the 2018 and 2019 versions of the Bolt, GM continued to tout the Bolt's range prominently in advertisements and press materials that it intended to be disseminated to consumers.  Despite GM's representations, the most critical aspect of the Bolt's much- lauded range—the battery—could not be safely charged fully, and the represented range could not be achieved without risking a catastrophic fire.

### C.    The Defective Battery Poses a Significant Safety Risk to Defective Vehicle Owners and Lessees.

842.    Lithium ion batteries, such as the Defective Battery used in the Bolt, are used in most electric vehicles because of their "high power-to-weight ratio, high energy efficiency, good high-temperature performance, and low self-discharge." However, these batteries also have a well-documented history of fire issues. Safety concerns related to unexpected fires have been well documented—including a battery fire that happened weeks after the crash test of a Chevy Volt in 2011 and several Tesla Model S vehicles that suddenly caught fire while parked -- and are known to GM.  Unfortunately, GM ignored safety concerns in order to market the Vehicle's range, despite warnings published in October 2017 by the National Highway Traffic Safety Administration ("NHTSA") that overcharging lithium-ion batteries can result in one of several exothermic reactions that have the potential to initiate thermal runaway resulting in a spontaneous ignition.

### 1.    The Bolt Lithium-Ion Battery Is Defective.

843.    Like other batteries, lithium-ion batteries are made up, in pertinent part, of multiple power-generating compartments called "cells." Each cell contains the basic functional components of a battery: a positive electrode, a negative electrode, and an electrolyte.

844. In order to develop a battery that would deliver the advertised range, Defendants developed a battery with "new cell design and chemistry." The battery contains "nickel-rich lithium-ion chemistry" that purportedly provides "improved thermal performance over other chemistries" and requires a "smaller active cooling system for more efficient packaging." According to Defendants, the Bolt uses "active thermal conditioning . . . to keep the battery operating at its optimum temperature, which results in solid battery life performance."

845. The lithium-ion Batteries in the Defective Vehicles were produced at an LG Chem facility in Ochang, South Korea. An image of the Bolt's battery pack is displayed below:



846. The Bolt's battery is structured with the cells arranged "like books on a bookshelf, in groups." Each group of pouch cells is "stacked to make modules," which are "held together at the ends by long bolts." "The [battery] pack thermal management is regulated by sensing temperature via thermistors located at the ends of the modules" and the liquid coolant is distributed via channels at the base of the cell packs.

847. GM repeatedly advertised this cell design and chemistry as delivering "a battery system with 160 kilowatts of peak power and 60 kilowatts hours of energy." However, GM was

unable to achieve this result without endangering Plaintiffs and other drivers because the thermal management system was inadequate to warn of and prevent thermal runaway during charging.

848.   According to NHTSA, proper management of the electrical loads among cells in a pack helps maintain overall charge and discharge performance within an acceptable range. Because temperature is a key indicator of cell electrical performance (e.g., hotter cells may discharge or charge more quickly than colder cells), thermal management strategies must be integrated into the battery system design to monitor charging and discharging events and mitigate potentially problematic conditions that can create a risk of fires like those at issue here.

## 2.   Defendants Knew About the Battery Defect.

849.   The dangers inherent in lithium-ion electric car batteries were well-known to Defendants before GM sold the first Chevy Bolt vehicle.  An October 2017 NHTSA Paper titled Lithium-ion Battery Safety Issues for Electric and Plug-in Hybrid Vehicles similarly explained:

- Li-ion battery technology is in the development stage and is not yet settled.

- As battery technology matures, the safety risks may increase as manufacturers attempt to obtain greater performance from existing chemistries and adopt new chemistries with less field experience. Increasing the bounds of performance implies operating the battery cells closer to limits where damage initiation and growth, leading to failure, can occur.

- The investigation conducted here demonstrates that there are numerous external events or processes in the life a vehicle that could contribute to damage and failure of a Li-ion battery.

- Exothermic reactions and/or internal electrical shorts may be triggered by manufacturing defects . . . .  If allowed to continue, these reactions or shorts can create conditions for self-heating within the cell; which grow to become uncontrolled increases in temperature and pressure (thermal runaway); and potentially end in venting or catastrophic failure of the cell.

- The assessment conducted here suggests that codes and standards for Li-ion battery vehicle systems are in their early development stages and immature at this time.

The assessment suggests there are gaps and risks inherent in new and rapidly evolving technology including:

- Immature design and manufacturing standards;

- Immature safety systems integration requirements;

- Immature quality control requirements;

- Immature battery life cycle durability requirements.

- The results of this investigation show that Li-ion battery technology is a rapidly evolving technology field that is far from settled.

- The risks associated with Li-ion battery systems derive fundamentally from the novelty of the technology and limited long-term experience base with its safety performance.

- The ability to store and deliver substantial energy onboard a vehicle also implies that substantial energy can be released, with corresponding hazards, in the case of failure. In this case, the energy is stored electrochemically in batteries, rather than chemically as a fuel. While systems safety engineering can achieve levels of safety with Li-ion technology comparable to that of conventional fuels, the automotive industry does not have decades of experience with it and the same understanding that it has concerning conventional and alternative fuels. Nor is there a directly comparable technology that can provide a strong experience base for development of safety requirements.

https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/12848-lithiumionsafetyhybrids_101217-v3-tag.pdf

850.    A meta-review of lithium-ion battery ("LIB") fire safety, in an article published in

the Journal of the Electrochemical Society, similarly stated:

- Although great success has been made on LIB commercialization, safety concerns have emerged because of unexpected fires. Some LIBs can display a tendency to ignite under abuse conditions and initiate fires or release toxic gases, thus creating a hazard. Moreover, as LIB technology moves to larger scales, from single cells to modules and packs, assuring their safety is an issue of growing severity and stakes. Exceeding the window of conditions in which LIBs operate safely can trigger thermal runaway (TR) and lead to fires.

- The temperature of the LIB reaches a critical value such that the reaction rate of an exothermic reaction increases the temperature, which in turn leads to further acceleration of the reaction rate. This positive feedback of temperature increase is

265

a sign of ignition and creates the fire hazards. Once a cell fails, the large amount of heat generated could trigger the thermal runaway of adjacent cells, contributing to fire propagation. Fires on the module and pack scales can release large amounts of heat and toxic gases and are difficult to suppress.

- Internal cell defects and internal faults that develop inside individual cells over time, causing the initiation of thermal runaway, are a major concern for all industries which demand methods and tools to reliably identify them.

- Another important concern that most industries agree on is the importance of the scale at which the safety testing takes place. The tests performed at component level might not be comparable to the tests performed at system level. Most of the research on safety is performed on cell or small modules, and similar data at pack and system is scarce.

- LIB failure can occur very rapidly after a cell is damaged, or slowly over a long period of time, causing delayed failure long after the damage is initiated. The time in between is usually referred to as the incubation period which can last from several hours to years, depending on the cause and failure mechanism. However, when a critical point is reached, usually governed by the balance between heat generation and heat dissipation from the cell and battery pack to the environment, the failure happens very fast.

https://iopscience.iop.org/article/10.1149/1945-7111/aba8b9

851.    Like other batteries, lithium-ion batteries are made up, in pertinent part, of multiple power-generating compartments called "cells." Each cell contains the basic functional components of a battery: a positive electrode, a negative electrode, and an electrolyte.  In order to develop a battery that would deliver the advertised range, Defendants developed a battery with "new cell design and chemistry." The battery contains "nickel-rich lithium-ion chemistry" that purportedly provides "improved thermal performance over other chemistries" and requires a "smaller active cooling system for more efficient packaging."  According to Defendants, the Bolt uses "active thermal conditioning . . . to keep the battery operating at its optimum temperature, which results in solid battery life performance."

852.    According to NHTSA, proper management of the electrical loads among cells in a pack helps maintain overall charge and discharge performance within an acceptable range.

Because temperature is a key indicator of cell electrical performance (e.g., hotter cells may discharge or charge more quickly than colder cells), thermal management strategies must be integrated into the battery system design to monitor charging and discharging events and mitigate potentially problematic conditions that can create a risk of fires like those at issue here.

853. After the release of the 2017 Chevy Bolt in 2016, drivers quickly began to experience issues stemming from the Bolt's lithium-ion battery. Drivers experienced losses of propulsion while driving the vehicles—including experiencing a sudden inability to accelerate the vehicle while driving.  Multiple drivers experienced sudden drops in battery levels and loss of power to their vehicles, some while driving in dangerous conditions.

854. In December 2016, shortly after launching the Bolt, GM issued Technical Service Bulletin ("TSB") PIC6239 informing dealers of a "Bolt EV (BEV2) High Voltage Battery Exchange and internal Parts Process" that might require dealers to replace the Bolt's "Rechargeable Energy Storage System (RESS)" (i.e., the Battery) or certain related components. This quality improvement program listed steps to determine whether components of the high voltage battery pack needed replacement.  GM addressed the loss of propulsion issue caused by the Defective Battery in a November 2017 Customer Satisfaction Program ("CSP") bulletin:

> Certain 2017 model year Chevrolet Bolt EV vehicles may have a condition in which the cells within the battery pack have low voltage. This condition is related to the state of charge of the cell group. Eventually, the difference in the state of charge of the cell groups (average vs. minimum) may exceed a threshold.

GM informed owners that when this condition occurs, the "high voltage battery pack" must be replaced.

855. On April 3, 2018, GM issued a customer satisfaction notice instructing certain owners and lessees of the 2017 Chevy Bolt to get a dealer-installed software update because otherwise the Vehicle "may experience 'loss of propulsion' and stop suddenly without warning

due to low charge despite the battery indicator showing charge.  This problem reveals that the Vehicle's battery management system is or was unable to accurately sense the actual state of the cells within the battery. This would not be the first experience with that type of defect by LG, GM's battery supplier; in October 2020, LG batteries in Hyundai vehicles experienced a risk of fire due to, in part, a software management system, and LG claimed 70% of the cost of the recall.

856.    On or about April 19, 2018, GM published a manufacturer communication entitled "Vehicle No Start Due to Dead Battery." The advisory notes limit an investigation of this issue only to customers who comment about a dead battery and whose affected part is included in GM's Global Warranty Management/Investigate History link. If a customer met the above two conditions, then the investigation performed would be used "to determine the root cause of the above condition."

857.    On May 11, 2018, GM released "Customer Satisfaction Program 18125 Loss of Propulsion High Voltage Battery Without Notification" regarding all Bolt EVs, including 2017 models that had already received the software update released little more than a month earlier. The May notice disclosed that "[c]ertain 2017-2018 model year Bolt EV Vehicles may have a condition *where the software will not detect the difference in the state of charge between the cell groups of the battery and over predict the indicated battery rang*e. The current software may not provide sufficient warning prior to a battery cell low range condition, which may result in a loss of propulsion." GM also stated that "cells within the battery pack may have a low voltage condition which is directly linked to the state of charge of the cell group."  GM explained that all Bolt EVs needed the software update to "increase[] the accuracy of the range estimation" and "provid[e] more warning at low states of charge." GM updated its service procedure for this problem in August 2018.  In August 2018, GM issued another Customer Satisfaction Program, stating:

> Certain 2017-2018 model year Bolt EV vehicles may have a condition where the software will not detect the difference in the state of charge between the cell groups of the battery and over predict the indicated battery range. The current software may not provide sufficient warning prior to a battery cell low range condition, which may result in a loss of propulsion. Only certain vehicles will experience the battery low voltage cell condition.

According to GM, the Bolt software could not diagnose a cell defect and provide sufficient warning to the customer prior to loss of propulsion.   In a 2019 interview with InsideEVs, Tim Grewe, GM's chief engineer of electric propulsion systems, publicly acknowledged that LG Chem's manufacturing practices had caused battery issues, including "reduced range and early capacity fade" in some Bolt EVs and the loss of propulsion problems stemmed from the Bolt's battery imbalance problems.

858.   The loss of propulsion issue that emerged in 2016 put Defendants on notice of problems with the Bolt's battery that should have alerted them to the battery defects that ultimately led to vehicle fires beginning in 2019.  For example:

- both problems related to the batteries in the subject vehicles;

- the batteries at issue in the 2016 loss of propulsion problem and the 2019 fire problem were made by the same suppliers at the same factories;

- GM knew from the 2016 loss of propulsion problem that there were serious supplier manufacturing issues and quality concern with LGE, the battery supplier;

- the root cause of the loss of propulsion problem in 2016 was a tear in the separator material of the vehicle's battery pack;

- As a result of the 2016 loss of propulsion issue, GM explored changes to the design of the separator in the Bolt battery packs;

- One of the two root causes of the battery fire defect was a folded separator;

- GM knew from the 2016 loss of propulsion problem that the Bolt software could not detect the difference in the state of charge between the cell groups of the battery before the battery dropped to a dangerously low level, leading to a sudden loss of propulsion;

- The 2019 battery fires occurred without warning because the Bolt software could not detect could the difference in the state of charge between the cell groups before the battery reached a dangerously high level, leading to a thermal runaway event and fire;

- In response to the 2016 loss of propulsion problems, GM considered diagnostic improvements to the Bolt's software that could detect a dangerous state of charge;

- In response to the 2019 battery fires and resulting investigation, GM "installed onboard diagnostic software" designed to detect potential issues with the batteries' state of charge.

In summary, the 2016 loss of propulsion problems occurred due to separator tear resulting from supplier manufacturing issues at LG. The problem was exacerbated because the Bolt software was unable to accurately detect the state of cell charge and warn users about a dangerously low charge level before a sudden loss of propulsion occurred. The 2019 fires occurred due to a folded separator resulting from supplier manufacturing issues at LG. The problem was exacerbated because the Bolt software was unable to accurately detect the state of cell charge and warn users about a dangerously high charge level before a sudden thermal runaway event occurred. Due to these similarities, the 2016 loss of propulsion issue put Defendants on notice of the battery defects that led to the 2019 fires.

859. By 2019, the issues with the lithium-ion batteries began to escalate when consumers began experiencing vehicle fires when charging their vehicles to a full or near-full charge. On information and belief, the same issue that causes the low-voltage condition in certain cell groups can cause high-voltage conditions in certain cell groups in the Defective Battery. This issue can cause dangerous overheating of the battery while charging, resulting in fires in the Defective Vehicles. NHTSA has warned that the "affected vehicles' [battery] cell packs have the potential to smoke and ignite internally, which could spread to the rest of the vehicle and cause a structure

fire if parked inside a garage or near a house" and that the vehicles "can catch fire even if they are turned off, parked, and disconnected from a charging unit."

860. NHTSA maintains a database of motor-vehicle consumer complaints submitted since January 2000. GM, like other large automakers, regularly reviews these complaints and communicates directly with NHTSA. NHTSA has "[r]egular engagements with Original Equipment Manufacturers (OEMs), including weekly calls with large manufacturers" like GM.

861. The first complaint of spontaneous fire from the Defective Bolt vehicles was submitted to NHTSA on July 8, 2019:

> NHTSA ID Number: 11230072
> NHTSA Posting Date: July 8, 2019
>
> ON MARCH 17, 2019 AT APPROXIMATELY 3:45P.M., WE PARKED THE BOLT IN THE DRIVEWAY OF OUR HOME. WE EXITED THE BOLT AND PLUGGED IT INTO OUR JUICEBOX (LEVEL 2) CHARGER AS USUAL. AT APPROXIMATELY 5:00 PM, WE WERE ALERTED THAT THE BOLT WAS ON FIRE. WE DISCOVERED SMOKE BILLOWING OUT OF THE REAR OF THE BOLT AND THE BOLT APPARENTLY COMBUSTING FROM WITHIN IN THE AREA OF THE BATTERY CELLS. THE FIRE DEPARTMENT WAS CONTACTED AND TOOK APPROXIMATELY 3 HOURS TO CONTROL THE FIRE AND SMOKE. THE FIRE DEPARTMENT EVACUATED US, OUR DOWNSTAIRS NEIGHBORS, AND BOTH UNITS OF THE HOME NEXT DOOR DURING THE FIRE. THE FUMES FROM THE BURNING MATERIALS WAS SO THICK AND NOXIOUS IT PERMEATED OUR HOME, REQUIRING PROFESSIONAL CLEANING. WE EXPERIENCED HEADACHES FOLLOWING CONTACT WITH THE SMOKE. THE BOLT IS A TOTAL LOSS. IT TOOK CHEVY A FEW DAYS TO RESPOND TO OUR CLAIM. EVENTUALLY CHEVY SENT TWO ENGINEERS FROM DETROIT TO OUR DRIVEWAY TO INSPECT THE JUICE BOX. **CHEVY PURCHASED THE CAR FROM THE INSURANCE COMPANY**.

In response to this NHTSA complaint, GM sent two engineers from Detroit to inspect the owners' charger and purchased the destroyed Bolt from the driver's insurance company so that it could conducting testing designed to determine the root cause of the battery fire.

862.     During the summer of 2020, GM received at least four additional claims alleging that the Defective Vehicles' battery pack had caused a fire. During that time, GM identified more than a dozen battery-related allegations of fire involving 2017–19 Bolt vehicles.  GM's internal investigations (spanning from August-November 2020, according to GM) revealed that in at least five of those cases the fire was related to the battery. In four such cases, the fire occurred when the battery was highly charged just before the fire occurred.

863.     During this same time frame, numerous additional battery-related vehicle fires in Chevy Bolts were reported to NHTSA, including the following:

NHTSA ID Number: 11365622
NHTSA Posting Date: Oct. 21, 2020

I BROUGHT THE CAR TO THE DEALER ON 2 SEPARATE OCCASIONS WITH CONCERNS OF A FAULTY BATTERY. THE BATTERY SUDDENLY STOPPED CHARGING FULLY. HOWEVER, I WAS TOLD BY THE DEALER TWICE THAT THE BATTERY WAS FUNCTIONING PROPERLY AND THERE WAS NOTHING THEY COULD DO. I OPENED A CLAIM WITH GM REGARDING THIS INCIDENT, ASKING THEM TO REPLACE THE BATTERY, SINCE IT WAS STILL UNDER WARRANTY, AND THERE WAS CLEARLY AN ISSUE. AFTER MONTHS OF BACK-AND-FORTH, GM CLOSED MY CASE STATING IT WAS NORMAL DEPRECIATION OF THE BATTERY. ONE WEEK AFTER THEY CLOSED MY CASE, **THE BATTERY SPONTANEOUSLY CAUGHT FIRE WHILE CHARGING IN MY GARAGE OVERNIGHT**. IT TOTALED 2 VEHICLES, CHARRED EVERYTHING IN MY GARAGE, AND CAUSED SUCH SEVERE SMOKE DAMAGE THAT ALMOST EVERYTHING IN MY HOME WAS A TOTAL LOSS. THE FIRE DEPARTMENT DETERMINED THE FIRE ORIGINATED FROM THE TRUNK AREA, WHERE THE BATTERY IS. MY FAMILY IS DISPLACED WHILE REPAIRS ARE BEING DONE TO MY HOME, AT A TUNE OF APPROXIMATELY $200,000 AT THIS POINT. WE LOST APPROXIMATELY $105,000 IN CONTENTS, AS WELL AS THE 2 TOTALED VEHICLES ($75,000).

NHTSA ID Number: 11364692
NHTSA Posting Date: Oct. 16, 2020

CHEVY BOLT FINISHED CHANGING AND THEN STARTED TO SMOKE FROM UNDER THE CAR. THE SOUND OF POPPING NOISES WERE HEARD AND THEN **10 MINUTES LATER THE CAR WAS ENGULFED IN**

272

**FLAMES**. THE CARS BATTERY PACK STARTING POPPING THEN EXPLODED IN FLAMES.

NHTSA ID Number: 11374956
NHTSA Posting Date: Nov. 17, 2020

2017 BOLT EV WAS PARKED NOSE INTO GARAGE PLUGGED INTO WALL CHARGER CHARGING UNATTENDED WITH MY PHONE SET TO ALERT ME WHEN ESTIMATED TO BE FULLY CHARGED. WHEN I CAME OUT OF THE HOUSE TO UNPLUG CHARGER THERE WAS FIRE VISIBLE UNDER BACK SEAT IN PASSENGER COMPARTMENT OF VEHICLE. CALLED 911 AND BY THE TIME POLICE AND FIRE RESPONDED WITHIN A FEW MINUTES **ENTIRE BATTERY UNDER VEHICLE ENGULFED CAR IN FLAMES** CAUSING GARAGE FIRE WHICH DESTROYED GARAGE AND ALL IT CONTENTS.JUST LEARNED FROM CARFAX THAT GM ISSUED RECALL NOVEMBER 15 FOR POTENTIAL BATTERY FIRES WHEN AT OR NEAR FULL CHARGE.

NHTSA ID Number: 11339878
NHTSA Posting Date: July 17, 2020
MY 2019 CHEVY BOLT WAS FULLY CHARGED AND DRIVEN FOR 12 MILES TO OUR DESTINATION, A TOWNHOUSE DEVELOPMENT WITH PRIVATE OUTDOOR OPEN PARKING. WE ARRIVED AROUND 7:30PM, PARKED IT AND TURNED IT OFF. 20 MINS LATER A NEIGHBOR RANG OUR DOORBELL BECAUSE THERE WAS 20 FOOT HIGH HEAVY WHITE/GRAY SMOKE CLOUD COMING OUT THE BACK OF THE CAR. I CALLED 911 AND FIREFIGHTERS DOUSED THE CAR WITH WATER FOR AN HOUR AFTER SMASHING THE REAR WINDOW TO GET ACCESS TO THE SMOKING AREA.THEY LEFT, LESS THAN AN HOUR LATER I CALLED 911 AGAIN B/C THE SMOKE RESTARTED. SMOLDERING WAS SO HOT IT PARTLY BURNED THE BACKSEAT. ONCE THE CAR WAS COOL ENOUGH IT WAS TOWED TO THE DEALERSHIP WHERE IT WAS ORIGINALLY PURCHASED. THERE IT BEGAN TO SMOKE AGAIN. 911 WAS CALLED AND FIREFIGHTERS PUT OUT THE SMOKE ONCE AGAIN. THIS TIME THE SMOKE WAS SMALL AND STARTED ON THE AREA WHERE THE BACKSEAT WAS PREVIOUSLY LOCATED; MINUTES LATER THE SAME HEAVY SMOKE CAME OUT FAST FROM UNDERNEATH THE FRONT PASSENGER SIDE. THE POLICE WERE THERE TO WITNESS THAT INCIDENT. IT WAS AROUND MIDNIGHT THEN.

EVEN THOUGH THE CAR IS STILL UNDER GM'S WARRANTY, THEY REFUSE TO INVESTIGATE BECAUSE WE CALLED OUR INSURANCE FIRST INSTEAD OF GM (PER GM'S PRODUCT ASSISTANCE CLAIM TEAM). THE CAR IS CURRENTLY AT AIIA AND GM COULD GO INVESTIGATE. BUT THEY WON'T. HOW MANY OTHER BOLTS ARE

SPONTANEOUSLY COMBUSTING AND PEOPLE GETTING HURT? **HOW MANY WILL IT TAKE FOR GM TO CARE?**

864.    During the period from 2017-2022, there were also reports in the automotive press regarding spontaneous fires allegedly caused by defective lithium-ion batteries manufactured by LG, the company that manufactured the Bolt batteries at issue here.  From 2017-2002, there were numerous reports of LG battery-related vehicle fires in Hyundai electric cars.  The Hyundai battery defects led to a recall in February 2021.  In 2017-2018, there were also fire-related recalls of similar LG lithium-ion batteries used in residential power systems.  And from 2018-2020, there were also several reports of fires caused by faulty LG electric batteries in Chrysler Pacifica vehicles which led to a vehicle recall in February 2022.

865.    Despite evidence of fires resulting from charging the Bolt's batteries to 100%— and despite GM's purchase of an affected Vehicle for investigative purposes and knowledge of the fires—a GM engineer gave an interview months after the first NHTSA complaints, saying that "[w]e engineered the battery system so that you can charge to 100% and maximize range. If you want maximum range, charge to 100%." GM actually encouraged Chevy Bolt owners and lessees to "top off your battery as much or as little as you like."

866.    In short, Defendants knew since at least 2017 of a serious battery defect and safety concern with its Chevy Bolt vehicles.  Despite such knowledge, despite such knowledge accumulating even deeper over time as discussed above, and despite also knowing that it had not made changes or repairs necessary to resolve the underlying defect and safety concern, GM continued to sell Chevy Bolts with the same Defective Battery in 2018, 2019, 2020, 2021, and 2022 without disclosing the defect and safety concern and without disclosing that the issue was ongoing and unresolved.  Defendants had exclusive and superior knowledge of the battery defects and Plaintiffs could not reasonably discover the defects through reasonable diligence.  Among

other sources, Defendants knew or should have known of the widespread battery defect through widespread industry knowledge of the dangers inherent in lithium-ion electric car batteries, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early reports of loss of propulsion in Bolt vehicles caused by low battery voltage, reports of fires caused by defective Bolt batteries, consumer complaints made to GM's network of dealers and directly to GM, aggregate warranty data compiled from GM's network of dealers, testing conducted by GM in response to consumer complaints, repair order and parts data received by GM from GM's network of dealers, recall notices, customer satisfaction notices ("CSNs"), technical service bulletins ("TSBs"), internal investigations and failure analyses, software updates, diagnostic software update vehicle data and NHSTA reports. Despite such knowledge, Defendants suppressed the true facts in order to sell additional vehicles, avoid the cost of repairs, replacements or recalls, limit warranty claims and avoid bad press.

867.    Defendants had a duty to disclose the defective vehicles and batteries and the safety risk caused by such defects because:

    a.    Defendants were in a superior position to know the true state of facts about the defective vehicles and their defective batteries and had exclusive knowledge of the defects based on sources not available to consumers;

    b.    Plaintiffs could not reasonably have been expected to learn or discover that the vehicles were defective or had defective batteries;

    c.    Defendants actively concealed the defects at issue, which were material facts of which they had exclusive knowledge;

    d.    Defendants knew that Plaintiffs were not aware of the defects, that they could not reasonably have been expected to learn about or discover that the vehicles were defective or had defective batteries and that they would not have purchased the

vehicles, or would have paid substantially less for the vehicles, had they been aware of the defects;

e. The existence of the battery defects was a material fact, pertaining to vehicle safety, that a reasonable consumer would consider highly material in determining whether to purchase or lease the subject vehicles and at what price; and

f. Defendants made partial disclosures about the vehicles' range and the batteries' capabilities that were misleading without full disclosure of the battery defects.

**D.     GM issues Ineffective Recalls of the Defective Vehicles.**

**1.     November 2020 Recall.**

868.    On November 13, 2020, more than a year after the first known incident of fire in the Defective Vehicles, and more than four years after GM began manufacturing and distributing the Defective Vehicles, GM issued Recall N202311730.  The recall covered all 2017-2019 Chevy Bolt EVs and warned that the vehicles' high voltage batteries "may pose a risk of fire when charged to full, or very close to full, capacity." Instead of completely recalling the Defective Vehicles to replace the dangerous batteries, GM's recall initially proposed an "interim remedy" for the Defective Vehicles that would limit the battery capacity of the Vehicles to 90% by reprogramming the hybrid propulsion control module:



| GM Recall #: | NHTSA # | | Date Issued: |
|---|---|---|---|
| N202311730 | 20V701 | | Nov 13, 2020 |

**Recall Title:**

High Voltage Battery May Melt or Burn

**Recall Description:**

General Motors has decided that a defect which relates to motor vehicle safety exists in select 2017-2019 model year Chevrolet Bolt EV vehicles. A select number of these vehicles were built with high voltage batteries produced at LG Chem's Ochang, Korea facility that may pose a risk of fire when charged to full, or very close to full, capacity. While our investigation into this condition continues, GM has developed software that will limit vehicle charging to 90% of full capacity to mitigate this risk.

**Safety Risk Description:**

If the batteries in select vehicles within this population are charged to full capacity, or very close to full capacity, the batteries may pose a risk of fire.

**Repair Description:**

As an interim remedy, dealers will reprogram the hybrid propulsion control module 2 (HPCM2) to limit full charge to 90%.

GM mailed recall notices to Bolt owners and lessees in November 2020. Below is a copy of a follow-up notice received by consumers:



Despite the fact that GM knew or should have known that the battery defect also existed in 2020 and 2021 Bolts, the recall was limited to 2017-2019 vehicles.

869.    GM also emailed a notice entitled "Important safety information regarding your Chevrolet Bolt EV" to Bolt owners and lessees in November 2020:



870.    As part of the November 2020 recall, GM notified consumers that dealerships would offer a software update to implement the interim remedy.  GM also instructed consumers how to reduce the Vehicle change settings themselves in order to limit the charging capacity to

90%, leading to a reduction in range of at least 24 miles. GM also instructed consumers not to park their Vehicles in garages or carports until after they had implemented the software changes:

> We will be providing our dealers with a software update beginning November 17, 2020 that will limit the charge for all the vehicles in this population to 90% while we continue to investigate the cause of these incidents. In the meantime, we know that the safety of our owners and their families is paramount, which is why we're asking owners to take the following steps now that will limit the charge capacity to 90% and reduce the risk of fire.

> If you are unable to successfully make these changes, or do not feel comfortable making these changes, we ask you to not park your car in your garage or carport until after you have visited your dealer.

As a result of GM's warnings, parking garages and other facilities across the country began "banning" Chevy Bolt owners:







871.    GM's interim remedy not only substantially limited the range of Defective Vehicles, but failed to prevent battery fires. For example, one 2018 Chevy Bolt owner had the interim remedy applied to his Vehicle on March 25, 2021. On May 1, 2021, his Vehicle experienced a battery fire at approximately 11:00 am while his car was parked inside the garage of his home, resulting in an estimated $235,000 worth of damage to his Vehicle and property. The Vehicle was not charging at the time, and prior to the battery fire it was "rarely used" and "[t]he owner did not charge to full often, if ever."

### 2.    April 2021 "fix."

872.    On April 29, 2021, GM announced a purported permanent "fix" for the Defective Batteries in the Defective Vehicles. GM's remedy consisted of a GM dealer tool to "identify potential battery anomalies and replace battery module assemblies as necessary" coupled with the installation of "advanced onboard diagnostic software into these [Defective] Vehicles that … has the ability to detect potential issues related to changes in battery module performance before problems can develop." The new diagnostic software was "supposed to monitor the [battery] cells for voltage variations much more closely and often than before. The idea is to proactively look for the conditions or indications that could lead to a fire. This way they can either avoid them, or get the battery replaced before a fire occurs." If the software detected an abnormality, it advised the operator to take the Vehicle in for a battery swap.

873.    In addition, the software "also monitors the battery after the charge completes to look for abnormalities" and "if the car detects a 'thermal runaway' event (aka impending fire), it will blare the horn and flash the lights." Crucially, like GM's interim November 2020 remedy, the April recall did not cure the Defective Battery in the Defective Vehicles. Rather, it alerted operators of the Defective Vehicles that a battery fire may still occur or is occurring. The warning

did nothing to prevent a runaway event, and in practical terms it was next to worthless as a warning of an impending fire. Despite the fact that GM knew or should have known that the battery defect also existed in 2020 and 2021 Bolts, the April 2021 recall was limited to 2017-2019 vehicles.

874.    Like the interim November 2020 remedy, GM's April purported "fix" did not prevent battery fires. On July 1, 2021, Tim Briglin, a Vermont state legislator and owner of a 2019 Chevy Bolt, experienced a battery fire despite having GM's new diagnostic software installed on June 9, 2021. A photo of the burned vehicle is below:



875.    Prior to receiving the purportedly permanent recall fix, Briglin followed GM's instructions and limited the charge of his Vehicle to 80% capacity and reported no other issues with his Vehicle. At the time he received the recall fix his Vehicle had only 38,264 miles on the odometer. After receiving the recall fix, he resumed charging his battery as instructed by GM.

876.    At least two more Vehicles spontaneously caught fire after receiving the April 2021 "fix." On July 14, 2021, GM released a new recommendation to Plaintiffs: park the Vehicles outside, "away from homes and other structures," immediately after charging, and do not charge

the Vehicles overnight. GM recommended this regardless of whether the Vehicle had had the interim or final recall remedy completed.

### 3.      July 2021 Recall and Safety Guidance.

877.     On July 23, 2021, GM announced Recall N212343880 for all 2017–19 Chevrolet Bolt vehicles, regardless of whether they had already had the previous recall(s) performed. GM announced that it would use software to check for potentially defective batteries and then replace them as needed.  Dealers would also install diagnostic software that would allegedly warn of impending fires.   In the meantime, GM imposed stringent restrictions on the charging and use of the 2017–19 Defective Vehicles: customers were to limit charging capacity to 90% and avoid depleting their battery below "approximately 70 miles of remaining range," instructions that resulted in a loss of range of more than 40%.  GM also instructed owners to "continue to park their vehicles outside immediately after charging and not leave their vehicles charging overnight," inconveniencing their customers and rendering it difficult for them to charge their vehicles. Despite the fact that GM knew or should have known that the battery defect also existed in 2020 and 2021 Bolts, the July 2021 recall was limited to 2017-2019 vehicles.

### 4.      August 2021 Recall.

878.     In August 17, 2021, GM announced Recall N212345940, which expanded the July 2021 recall to include roughly 9,000 previously excluded 2019 model year Defective Vehicles plus more than sixty-thousand 2020–22 model year Defective Vehicles. Once again, GM asked customers to limit charging capacity to 90%, to avoid depleting their battery below "approximately 70 miles of remaining range and to "continue to park their vehicles outside immediately after charging and not leave their vehicles charging overnight:"

| Condition | General Motors has decided that a defect which relates to motor vehicle safety exists in 2020-22 model year Chevrolet Bolt EV and 2022 model year Chevrolet Bolt EUV vehicles.  The high voltage batteries in some vehicles may pose a risk of fire when charged to full, or very close to full, capacity. |
|---|---|
| Correction | The remedy will be the replacement of defective battery modules in the recall population.   Until the updated recall remedy is performed, customers should take the following interim steps: |
| | 1.    Customers should set their vehicle's high-voltage battery system to a 90% state of charge limitation using Target Charge Level mode.  If customers are unable to successfully make these changes, or do not feel comfortable making these changes, customers should visit their dealer to have these adjustments completed. |
| | 2.    Additionally, we ask that customers charge their vehicle more frequently and avoid depleting their battery below approximately 70 miles (113 KM) of remaining range, where possible. |
| | 3.    Out of an abundance of caution, customers should continue to park their vehicles outside immediately after charging and not leave their vehicles charging indoors overnight. |

GM admitted that it did not have a fix for the Vehicles at the time, stating that "we are working on a process to identify which modules are defect-free and which need to be replaced. Once we have a validated process, we will be able to replace only those modules that are actually defective."

879.    GM mailed notices of the updated recall to owners and lessees of the Vehicles in August 2021 such as the following:

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.

General Motors has decided that a defect which relates to motor vehicle safety exists in certain 2017 model year Chevrolet Bolt EV vehicles.  As a result, GM is conducting a safety recall.  We apologize for this inconvenience. However, we are concerned about your safety and continued satisfaction with our products.

**I M P O R T A N T**

- Your vehicle is involved in a new GM safety recall N212343880.
- Previously, you were notified that your vehicle is involved in GM recall N202311731. If you have not done so, you should visit your Chevrolet EV dealer to obtain the remedy for the previous recall, which includes an important software update and diagnostic check on the health of your vehicle's battery system.
- This letter contains important interim safety precautions that should be followed until the final recall remedy for new recall number N212343880 is performed on your vehicle.

**Why is your vehicle being recalled?**

Certain vehicles were built with high voltage cells produced at LG Chem's Oohang, Korea facility that pose a risk of fire when charged to full, or very close to full, capacity.  Experts from GM and LG have identified the simultaneous presence of two manufacturing defects in the same battery cell as the root cause of these battery fires.

**What will we do?**

**Parts to repair your vehicle are not currently available,** but when parts are available, your Chevrolet dealer will replace the lithium ion battery modules in your vehicle with new lithium ion battery modules.  This service will be performed for you at **no charge.**

We are working as quickly as possible to correct this condition.  When parts are available, we will send you another letter asking you to take your vehicle to your Chevrolet dealer to have your vehicle serviced.  You can also check the status of this recall at: https://my.gm.com/recalls.

284

| | |
|---|---|
| **What should you do?** | While we prepare to conduct this recall, you should take the following interim steps: |

1. You should, whether or not your vehicle received the recall remedy in GM safety recall N202311731, return your vehicle to the 90% state of charge limitation using Hilltop Reserve mode (for 2017-2018 model years) or Target Charge Level (for 2019 model year) mode. If you are unable to successfully make these changes, or do not feel comfortable making these changes, visit your Chevrolet EV dealer to have these adjustments completed, **free of charge.**

2. Charge your vehicle more frequently and avoid depleting your battery below approximately 70 miles (113 KM) of remaining range, where possible.

3. **Continue to park your vehicle outside immediately after charging and do not leave your vehicle charging indoors overnight.**

If you have not visited your dealer to receive the recall remedy in GM safety recall N202311731, you should visit your Chevrolet EV dealer to obtain this important software update, which includes a diagnostic check on the health of your vehicle's battery system. After obtaining the software update, you should still take the interim steps summarized above. When scheduling your appointment, confirm with the dealer that they are an EV certified dealer.

| | |
|---|---|
| **Do you have questions?** | If you have questions or concerns that your dealer is unable to resolve, please contact the Chevrolet EV Concierge team at 833-EVCHEVY (833-382-4389). Hours of operation are Monday through Friday, 8:00 AM to 12:00 AM ET or Saturday and Sunday, 12:00 PM to 9:00 PM ET. |

If after contacting your dealer and the Chevrolet EV Concierge, you are still not satisfied we have done our best to remedy this condition without charge and within a reasonable time, you may wish to write the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Avenue, SE., Washington, DC 20590, or call the toll-free Vehicle Safety Hotline at 1.888.327.4236 (TTY 1.800.424.9153), or go to http://www.safercar.gov. The National Highway Traffic Safety Administration Campaign ID Number for this recall is 21V560.

Federal regulation requires that any vehicle lessor receiving this recall notice must forward a copy of this notice to the lessee within ten days.

Regina A. Carto
Vice President
Global Product Safety and Systems

## 5. September 2021 Use Restrictions.

880. In September 2021, GM announced further restrictions on owners and lessees of the Vehicles. In addition to the recall instructions, if owners or lessees needed to park in a parking lot or structure, GM now recommended "parking on the top floor or on an open-air deck and park[ing]

285

50 feet or more away from [other] vehicle[s]." GM repeated this advice to consumers on multiple forums.

### 6. October 2021 Recall.

881. In October 2021, GM issued Recall N212343881 covering all 2017-2019 Chevy Bolt EVs.

**Product Safety Recall**
N212343881 High Voltage Battery May Melt or Burn 

| Make | Model | Model Year From | Model Year To | RPO | Description |
|------|-------|------|-----|-----|-------------|
| Chevrolet | Bolt EV | 2017 | 2019 | | |

Involved vehicles are marked "Open" on the Investigate Vehicle History screen in GM Global Warranty Management system. This site should always be checked to confirm vehicle involvement prior to beginning any required inspections and/or repairs.

| Condition | General Motors has decided that a defect which relates to motor vehicle safety exists in certain 2017-2019 model year Chevrolet Bolt EV vehicles. The high voltage batteries in these vehicles may pose a risk of fire when charged to full, or very close to full, capacity. |
|-----------|---|
| Correction | Dealers will replace the lithium-ion battery pack in the vehicle. |

Pursuant to the Recall, GM dealers would "replace the lithium-ion battery pack" in the affected vehicles. That same month, GM announced Recall N212345941, which expanded the battery replacement recall to all 2020-2022 Chevy Bolt EVs and 2022 Chevy Bolt EUVs. Despite these recalls, GM acknowledged that replacement batteries were not yet available for the recalled vehicles.

### 7. December 2021 Recall.

882. Despite promising to replace the batteries in all of the subject vehicles, GM apparently had a change of heart. In December 2021, GM announced Recall N212345940-01. The recall applied to all 2020-2022 Chevy Bolt EVs and 2022 Chevy Bolt EUVs. Rather than replace the defective batteries, GM announced that it would instead install new diagnostic software

that would limit the vehicle's maximum charge to 80% and would remove some of the prior charging and use limitations.  The new recall would lead to a decrease in range of more than 20%.

### 8.    Fall 2022 Recalls.

883.    In Fall 2022, GM announced Recalls N222369400, N222369401, and N222369401-01 relating to 2017-2023 Bolt vehicles.  GM allegedly discovered that prior versions of its diagnostic software were leading to "false diagnostic activation," which would ostensibly lead to unnecessary battery replacements. Of course, this consciously ignores the fact that GM had previously promised a free battery replacement to all Bolt owners -- a promise Plaintiffs relied on -- before reneging in December 2021.  As a result of the defective diagnostic software, GM installed new diagnostic software to eliminate the false positives.

### 9.    June 2023 Recall.

884.    In June 2023, GM issued Recall N212345944 and Recall N212345945.  The recalls applied to most 2020-2022 Chevy Bolt EVs and 2022 Bolt EUVs.  Pursuant to this recall, GM doubled down on its plan to abandon the battery replacement it had promised.  The recall informed Bolt owners that GM would install advanced diagnostic software that would limit the Defective Batteries to a maximum state of charge of 80%.  If no anomalies were detected by the software after 6200 miles of use, the battery would return to 100%.  If problems were the detected, battery would be replaced:

| Condition | General Motors has decided that a defect which relates to motor vehicle safety exists in certain 2020-2022 model year Chevrolet Bolt EV, and 2022 model year Chevrolet Bolt EUV vehicles. The high voltage batteries in these vehicles may pose a risk of fire when charged to full, or very close to full, capacity. |
|---|---|
| Correction | Dealers are to install the advanced diagnostic software that will monitor battery performance and identify defective battery modules that require replacement. |

GM issued a Notice to Consumers that explained the terms of the recall:

287

**Safety Recall**
N212345945 High Voltage Battery May Melt or Burn (GM Owned
Vehicles)





# NOTICE TO CUSTOMER

This vehicle is now updated with a new advanced diagnostic software that will continually
monitor the high voltage battery.   If the software detects a problem in your vehicle's high
voltage battery, you will be alerted via a warning in the driver information center. If this occurs,
you should contact your Chevrolet Bolt EV/EUV certified dealer to have the affected high
voltage battery module replaced.

The software will initially limit your vehicle's high voltage battery to a maximum state-of-charge
of 80%.  If no anomalies are detected after **approximately** 6,200 miles or 10,000 km of use,
the high voltage battery will automatically return to a maximum state-of-charge of 100%
without a return trip to the dealer.  After this occurs, the software's advanced diagnostics will
continue to monitor your vehicle's high voltage battery system.

885.   As part of the June 2023 recall, GM also informed owners that until they received

the new software or a new battery, they should continue to limit charging to 90%, not allow the

battery range to get below 70 miles, park their vehicle outside after charging and not charge their

vehicles indoors overnight:

If you have not been able to visit your local dealer for a software update or lithium-ion
battery module replacement, we ask that you continue to follow these steps:

1. Set your vehicle to a 90 percent state of charge limitation using Hilltop Reserve
   mode (for 2017-2018 model years) or Target Charge Level mode (for 2019-2022
   model years). Instructions on how to do this are available in the videos below. If you
   are unable to successfully make these changes, or do not feel comfortable making
   these changes, please visit your Chevrolet dealer to have these adjustments
   completed.

2. Charge your vehicle more frequently and avoid depleting your vehicle battery to
   below approximately 70 miles (113 kilometers) of remaining range, where possible.

3. Park your vehicle outside immediately after charging and do not leave your vehicle charging indoors overnight.

Following these instructions would lead to a 40% reduction in electric range.  Once again, replacement batteries were not readily available for those who qualified for a battery replacement.

### 10.   November 2023 Recall.

886.   In November 2023, GM introduced another new software update intended to reduce false diagnostic activation from previous software as part of recall N232421260.  It was intended not to benefit its customers but to eliminate costs associated with allegedly unnecessary battery pack replacements (despite the fact that GM had previously agreed to replace all battery packs). As a result of the new software update, customers who might have been about to reach the end of their 6000 miles battery "throttling" from prior software updates were sent back to the starting line.  The new software would again reduce their electric range and would need to be active for another 6200 miles before the "throttling" would end.   Posters immediately flocked to Chevybolt.org to complain.

### 11.   June 2024 Recall.

887.   Finally, in June 2024, GM announced recall N242443000 applicable to certain 2020-2022 Bolt EVs and 200 Bolt EUVs. According to GM's recall bulletin, the advanced diagnostic software it had previously announced may have been improperly installed in certain vehicles, leading to an increased risk of a battery-related fire.  According to the terms of the recall, GM would install new advanced diagnostic software that would limit the Defective Batteries to a maximum state of charge of 80%, leading to a range reduction of at least 20%. Customers who might have been about to reach the end of their 6200 miles battery "throttling" from prior software

updates had to start over. The new software would again reduce their electric range and would need to be active for another 6200 miles before the "throttling" would end.

### 12.     The recalls have been wholly ineffective.

888.    Despite GM's multiple recalls, Plaintiffs' vehicles cannot reach the advertised range, cannot be charged at convenient times or locations, and may spontaneously burst into flames, causing serious harm to the vehicle and its owners, lessees and occupants. Plaintiffs were deprived of the benefit of their bargain in purchasing or leasing their Defective Vehicles.

889.    Defendants have been unable to develop, implement, and deliver a repair that relieves consumers from their current unsafe and unacceptable circumstances. Even if they could do so tomorrow, Plaintiffs would still have suffered economic harm. Had Defendants disclosed the Vehicles' true characteristics, consumers would have paid much less for the Vehicles, if they would have bought or leased them at all. This means that Plaintiffs overpaid for the Defective Vehicles at the time of purchase. Plaintiffs drove their Vehicles less frequently because of range anxiety, range limitations, inconvenient charging, or other reasons related to the defects and therefore lost the benefits of use and the option for use.

890.    Lower performance, inferior performance capability, such as range limits, safety hazards, mitigation costs, and reduced value are all attributable to the defect and diminish the value of Plaintiffs' ownership experience, for reasons attributable to the unreasonable and undisclosed Battery Defects. As a result, Plaintiffs have suffered economic harm. Even a full and complete repair today, were one possible, would only terminate some of those injuries. It would not remedy harm that Plaintiffs have already suffered and will suffer in the future.

891.    As the ever-evolving recalls illustrate, Defendants have not been able to satisfactorily address the battery defects in the subject vehicles. Plaintiffs who have followed all

of GM's recalls have had software update after software update with no end in sight and no assurance that their vehicles will not burst into flames.

892.   Rather than replace all of the batteries at issue, as it had once promised to do, GM has instead insisted on a series of halting and ineffective half-measures designed to reduce its repair and replacement costs rather than truly solve the problem.  The myriad software updates have failed to resolve the root cause of the battery defect and have forced plaintiffs to reduce their electric range by between 20% and 40%.  The accompanying instructions have prevented plaintiffs at varying times from:

- fully charging their vehicles;

- allowing the charge in their vehicles to fully deplete;

- charging their cars overnight;

- parking their cars in garages or carports when fully charged;

- parking in commercial parking garages; and

- using their vehicles for longer trips.

The recalls and related battery problems also deprived the plaintiffs of the benefit of their bargain, caused them to incur overpayment damages at the time of sale, caused them to incur incidental mages after the recalls were announced and substantially decreased the resale or trade-in value of their vehicles.

<u>**GM's Express and Implied Warranties**</u>

893.   Plaintiffs or their predecessors in ownership purchased the subject vehicles from GM's network of authorized dealers who were authorized sellers and distributors of the subject vehicles.  Those dealers were and are GM's authorized representatives for service and repair, including warranty repairs, of the subject vehicles.  GM intends for the dealers to sell its vehicles

291

to consumers like Plaintiff and the contracts between GM and its authorized dealers, including the warranties, are made for the express benefit of the ultimate purchasers of the subject vehicles and not for the dealers.   As a result, Plaintiffs, not GM's dealers, are the intended third-party beneficiaries of all express and implied warranties between GM and its dealers relating to the subject vehicles and those warranties are designed solely for the benefit of the ultimate consumers of the subject vehicles.

894.    When each vehicle at issue herein was sold or leased to a Plaintiff, the vehicle was backed by GM's New Vehicle Limited Warranty, which covered the vehicle and warranted the vehicle, including the battery, to be free of defects in materials and workmanship at the time of purchase or lease. An implied warranty of merchantability also accompanied the sale and lease of the vehicles by operation of law under both the UCC and Song-Berly Act.

895.    Pursuant to the express and written New Vehicle Limited Warranty, GM warranted the Plaintiffs' vehicles' high voltage battery pack to be free of defects in materials and workmanship and that repairs and other adjustments would be made for the benefit of Plaintiffs by authorized GM dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

896.    Pursuant to the implied warranty, GM warranted the vehicles were merchantable under both the UCC and Song-Berly Act. A merchantable electric vehicle can be safely parked and charged inside a garage without the risk of fire. A merchantable electric vehicle can be safely charged to its full capacity without the risk of fire and can safely be driven to just short of the end of the battery range without the risk of fire.

897.    GM's New Vehicle Limited Warranty expressly states that it is "provided to the original and any subsequent owners of the vehicle." GM's New Vehicle Limited Warranty includes

an Electric Vehicle Warranty which is also expressly provided to "the initial owner of the vehicle" and "any subsequent person(s) who assumes ownership of the vehicle within the 8 years or 100,000 miles term."

898.   GM does not sell vehicles directly to consumers such as the Plaintiffs but rather only through its authorized GM dealers. The Plaintiffs acquired their vehicle at issue herein from an authorized GM dealer or acquired their vehicles from someone who had acquired the vehicle from an authorized GM dealer.

899.   GM also does not directly provide the repairs or other services called for under the terms of GM's New Vehicle Limited Warranty.  Instead, GM uses its authorized GM dealers to both provide the written New Vehicle Limited Warranty to consumers who purchase or lease GM vehicles and to perform repairs or other services under the terms of GM's New Vehicle Limited Warranty.

900.   As intended and directed by GM, GM's written New Vehicle Limited Warranty was provided to the Plaintiffs, the ultimate consumers, at the time they took delivery of the vehicle and as part of the basis of the bargain. GM's New Vehicle Limited Warranty contains the rights and obligations of both Plaintiffs and GM and is a binding agreement between them. The sale or lease of the vehicles by GM's authorized dealer, coupled with the issuance of GM's express warranty, created a direct transactional relationship between GM and the Plaintiffs.  Since GM provided an express and written warranty to the ultimate consumer with the purchase or lease of the vehicle no further "privity of contract" is required to enforce the warranties. *Seely v. White Motor Co*. (1965) 63 Cal. 2d 9, 14; *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 143-44.

901.    Moreover, when deciding to acquire the vehicles in question, the Plaintiffs were aware GM warranted that its vehicles to be free of defects at the time of purchase or lease and during the warranty period. In purchasing the subject vehicles, Plaintiffs relied on GM's warranty that the vehicles, including their electric batteries,  would be free of defects at the time of purchase or lease and during the warranty period.

902.    Additionally and alternatively, Plaintiffs may enforce the GM's express New Vehicle Limited Warranty as well as the implied warranty of merchantability as intended third-party beneficiaries. GM's written New Vehicle Limited Warranty and the implied warranty of merchantability were and are intended solely for the benefit of the Plaintiffs, *i.e.*, the owners of the vehicles who purchased or leased the vehicles.  Plaintiffs were and are the intended third-party beneficiaries of those warranties.  The dealers were not intended to be the ultimate consumers of the subject vehicles and have no rights under the warranty agreements applying to the vehicles.

903.    The express and implied warranties applicable to the subject vehicles were intended for the benefit of the ultimate purchasers and owners of the vehicles, whether the vehicles were purchased new or used and whether they were purchased from an authorized GM dealer or from someone else.  The applicable warranties are applicable to original or subsequent owners and are transferrable from owner to owner.

904.    GM's New Vehicle Limited Warranty is only intelligible if it is understood as being intended to benefit Plaintiffs, *i.e.* those who purchased or leased the vehicles and are thus owners of the vehicles.  The dealers were not intended to be the ultimate consumers of the subject vehicles, were not the intended beneficiaries of the express and implied warranties applying to the vehicles and  have no rights under the warranty agreements at issue. Rather, the warranty agreements were designed for and intended to benefit the ultimate consumers only.

294

905.    The New Vehicle Limited Warranty is clearly and unambiguously addressed to and for the benefit of the owner of the vehicle and is not addressed to or for the benefit of the dealer or anyone else.  Throughout the New Vehicle Limited Warranty, it refers primarily to three parties—GM, GM's dealer, and the vehicle owner who purchased or leased the vehicle—and refers to the roles, rights and obligations of those parties. The New Vehicle Limited Warranty makes plain that the role of the dealer is merely to help GM meet GM's obligations to the vehicle owner *for the benefit of the vehicle owner*. For example, GM's New Vehicle Limited Warranty states: "Any defects still present *at the time the vehicle is delivered **to you*** are covered by the warranty. *If **you** find any defects, advise **your dealer*** without delay" and *"*To obtain warranty repairs, take the vehicle to a Chevrolet dealer ..." (emphasis added).

906.    The New Vehicle Limited Warranty provides, in part:

Warranty Applies:

*This warranty* is for Chevrolet vehicles registered in the United States and normally operated in the United States, and *is provided to <u>the original and any subsequent **owners** of the vehicle</u>* during the warranty period.

The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle.

*To obtain warranty repairs, take the vehicle <u>to a Chevrolet dealer</u>* facility within the warranty period and request the needed repairs.

Electric Vehicle Warranty Coverage:
For vehicles sold in the United States, in addition to the Bumper-to-Bumper Coverage described previously, Chevrolet will warrant certain components for each electric vehicles for 8 years or 100,000 miles, whichever comes first, from the original in-service date of the vehicle, against warrantable repairs to the specific electric propulsion components of the vehicle.

This warranty is for the electric vehicles registered and normally operated in the United States. *In addition to the initial <u>owner of the vehicle</u>,* the coverage described in this Electric Vehicle Warranty is transferable at no cost to *<u>any</u>*

*subsequent person(s) who assumes ownership of the vehicle* within the 8 years or 100,000 miles term. No deductibles are associated with this warranty.

This warranty is in addition to the express conditions and warranties described previously. The coverage and benefits described under "New Vehicle Limited Warranty" are not extended or altered because of this special Electric Component Warranty.

What Is Covered:

This warranty covers repairs to Electric specific component defect related to materials or workmanship occurring during the 8 years or 100,000 miles term for the following:

Propulsion Battery Warranty Coverage

Like all batteries, the amount of energy that the high voltage propulsion battery can store will decrease with time and miles driven. The battery will be replaced/repaired if the capacity falls below 60% of its original value during the warranty period, *as determined by a certified dealer,* with a battery appropriate for the age and mileage of the vehicle.

Propulsion Battery Service

*Chevrolet has a network of certified dealers who are trained to perform repairs on electric vehicle battery packs.* If the Propulsion Battery requires service due to a defect in materials or workmanship, *Chevrolet will either repair or replace* the Propulsion Battery with new or refurbished components at Chevrolet's discretion.

Electric Vehicle Specific Components

The following components are covered under the Electric Vehicle component warranty:

Propulsion battery pack and all internal components

Electric drive unit(s) and all internal Components

*This warranty gives you specific legal rights* and you may also have other rights which vary from state to state.

Any defects still present *at the time the vehicle is delivered to you* are covered by the warranty. If you find any defects, advise *your dealer* without delay.

296

Warranty Service– United States:

The *selling dealer* has invested in the proper tools, training, and parts inventory to ensure that any necessary warranty repairs can be made to *your GM vehicle*. GM requests that the vehicle be *returned to the selling dealer for all warranty repairs*. If a situation or event occurs where you are significantly inconvenienced, an authorized GM dealer can make the warranty repairs

(emphasis added).

907.    Plaintiffs took their vehicles to GM's authorized dealers for service, maintenance and repairs, including repairs related to the defective batteries.  GM's authorized dealers received recall notices and Technical Service Bulletins relating to the defective batteries as well specific instructions from GM regarding the recall procedures, software updates, charge limitations and battery replacements relating to the battery recalls.  Plaintiffs took their vehicles to GM's authorized dealers for the recall remedies and those dealers, acting at GM's behest and direction,  performed GM's authorized recall remedies, installed software updates, imposed charging limitations or installed new electric batteries pursuant to the terms of GM's recalls.

908.    The terms of the warranties and the circumstances surrounding the purchase and sale of the vehicles demonstrate that the motivating purpose of GM's New Vehicle Limited Warranty was to provide a benefit to Plaintiffs (*i.e.,* the owners of the GM vehicles). Permitting Plaintiffs to bring this action to enforce the written warranty is consistent with the objectives of the New Vehicle Limited Warranty and with the reasonable expectations of the contracting parties. Relatedly, permitting Plaintiffs to bring this action to enforce the implied warranty of merchantability is also consistent with the objectives of the contracting parties and with the reasonable expectations of the contracting parties.

297

## CAUSES OF ACTION

### ALABAMA

**FIRST CAUSE OF ACTION - AGAINST GM**
**BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY**
**ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

909.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

910.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

911.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

912.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

913.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

914.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

915.     GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

916.     The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

917.     As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

918.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D.

Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

919.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

920.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

921.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY

922.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

923.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Alabama at Ala. Code § 7-2-101 et. seq. Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

924.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

925.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

926.     GM has breached its express warranties by failing to adequately repair the subject

vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain

in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

requiring repair or replacement within the applicable warranty periods, and refused to honor the

warranties by providing free repairs or replacements during the applicable warranty periods

sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable

time.

927.     The subject vehicles continue to contain defects that substantially impair the use,

safety and value of the vehicles.  These defects and non-conformities could not reasonably have

been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

928.     As a result of GM's breaches of express warranties, Plaintiffs have suffered

damages within the jurisdictional limits of this Court in the form of overpayment at the time of

purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an

award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

929.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not

required to do so because affording GM a reasonable opportunity to cure their breaches would

have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D.

Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would

have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations

the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that

GM offered were insufficient.").

930.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

931.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs. The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

932.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

933.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

934.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§

2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

935.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

936.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

937.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

304

938.    Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

939.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

940.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

941.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

942.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

943.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Alabama at Ala. Code § 7-2-101 et. seq.

944.    GM is a "merchant" with respect to motor vehicles under the Alabama statute.

945.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

946.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

947.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability

306

despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

948.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

949.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

950.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

951.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form

of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
## (ALA. CODE § 8-19-1 ET SEQ.)

952.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

953.     The Alabama Deceptive Trade Practices Act (Alabama DTPA) declares several specific actions to be unlawful, including: "engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5. Defendant violated the Alabama DTPA.

954.     Plaintiffs are "consumers" within the meaning of ALA. CODE. § 8-19-3(2).

955.     Plaintiffs and Defendants are "persons" within the meaning of ALA. CODE § 8-19-3(3).

956.     Each Defendant was and is engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

957.     Defendants violated the Alabama DTPA as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead. By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

308

958.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

959.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

960.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

309

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

961.   Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

962.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

963.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

964.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

965.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

966.     Pursuant to Ala. Code § 8-19-10, the Plaintiffs hereby sue Defendants for actual damages in an amount to be determined at trial.  Plaintiffs also hereby sue Defendants for three times the amount of actual damages plus attorneys' fees and costs per Ala. Code § 8-19-10 plus any other just and proper relief available under the Ala. Code § 8-19-1, et seq.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

967.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

968.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

969.     Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

311

970.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

971.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## ARIZONA

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

972.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

973.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

974.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and

312

that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

975.     The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

976.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

977.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

978.     GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

979.     The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

980.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

981.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

982.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

983.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining

power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

984.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY

985.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

986.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Arizona at Ariz. Rev. Stat. § 47-2101 et. seq. Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

315

987.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

988.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

989.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

990.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

991.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

992.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D.

Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

993.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

994.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

995.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

996.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

997.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

998.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

999.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1000.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1001.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1002.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1003. GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1004. Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

1005. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1006. Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Arizona at Ariz. Rev. Stat. § 47-2101 et. seq.

1007. GM is a "merchant" with respect to motor vehicles under the Arizona statute.

1008. GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1009. The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

320

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1010.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1011.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1012.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1013.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1014.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### VIOLATIONS OF THE CONSUMER FRAUD ACT
### (Ariz. Rev. Stat. § 44-1521, et seq.)

1015.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1016.   Plaintiffs have complied with all applicable pre-suit notice letter provisions, if any.

1017.   Defendants and Plaintiffs are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

1018.   The Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

1019.   The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or

omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. § 44-1522(A). Defendants intentionally violated the Arizona CFA

1020.   Defendants violated the Arizona CFA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties

1021.  Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1022.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1023.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h. Entering into a consumer transaction in which Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

1024. Defendants' violative practices were specifically designed to induce, and did in fact induce, the Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1025.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1026.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1027.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1028.   As a result of the defective batteries, Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1029.   Plaintiffs hereby sue Defendants for actual damages, including economic and non-economic damages (including, without limitation, damages for embarrassment, humiliation, inconvenience, mental anguish and emotional distress) in an amount to be determined at trial. Plaintiffs also sue Defendants for punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind. Plaintiffs also sue Defendants for attorneys' fees and costs and any other just and proper relief available under the Arizona CFA.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1030.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1031.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

1032.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1033.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1034.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## ARKANSAS

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1035.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1036.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1037.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1038.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

327

1039.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1040.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1041.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1042.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1043.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1044.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D.

328

Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1045.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1046.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1047.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1048.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1049.  Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Arkansas at Ark. Code Ann. § 4-2-101 et. seq.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1050.  As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1051.  Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

330

1052.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1053.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1054.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1055.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

331

1056.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1057.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1058.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1059.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1060.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§

2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1061.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1062.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1063.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1064.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1065.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1066.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1067.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION  - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

1068.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1069.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Arkansas at Ark. Code Ann. § 4-2-101 et. seq.

1070.   GM is a "merchant" with respect to motor vehicles under the Arkansas statute.

1071.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1072.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1073.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability

335

despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1074.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1075.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1076.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1077.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form

of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION**
**UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**ARKANSAS STAT. § 45.50.471, *et seq.***

1078.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1079.  The Arkansas Deceptive Trade Practices Act (Arkansas DTPA) prohibits "[d]eceptive and unconscionable trade practices," which include but are not limited to "[e]ngaging in any . . . unconscionable false, or deceptive act or practice in business, commerce, or trade." ARK. CODE. ANN. § 4-88-107(a)(10). The Arkansas DTPA also prohibits, in connection with the sale or advertisement of any goods, "(1) the act, use, or employment by any person of any deception, fraud, or pretense; or (2) the concealment, suppression, or omission of any material fact with intent that other rely upon the concealment, suppression, or omission." ARK  CODE. ANN. § 4-88-108.  Defendant's aforementioned conduct violated the Arkansas DTPA.

1080.   Defendants and Plaintiffs are "persons" within the meaning of ARK. CODE. ANN. § 4-88-102(5).

1081.   All of the vehicles at issue constitutes "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4)

1082.   Defendants violated the Arkansas DTPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by

337

marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1083.  Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1084.  Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1085.  Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to the Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

1086.  Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1087.  Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1088.  These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1089.  As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs

339

known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1090.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1091.   Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants acted wantonly in causing the Plaintiffs' injuries, or with such a conscious indifference to the consequences that malice may be inferred.  Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Arkansas DTPA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1092.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1093.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

1094.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1095.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1096.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COLORADO

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1097.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1098.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1099.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and

lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1100.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1101.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1102.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1103.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods

342

sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1104.  The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1105.  As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1106.  Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1107.  In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1108.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1109.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1110.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1111.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Colorado at Colo. Rev. Stat. § 4-2-101 et. seq.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would

be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1112.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1113.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1114.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1115.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

345

1116.  As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1117.  Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1118.  In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1119.  Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining

power existed between GM and the Plaintiffs because GM knew or should have known that the

Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1120.  Furthermore, the limited warranty promising to repair and/or correct a

manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the

promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1121.  Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

set forth herein.

1122.  Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty

Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§

2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products"

within the meaning of 15 U.S.C. § 2301(1).

1123.  GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and

any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit

for such use. This implied warranty included, among other things: (i) a warranty that the vehicles

were safe and reliable for providing transportation, and would not experience premature and

catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended

use while being operated.

1124.  The Defective Vehicles were and are not fit for their ordinary purpose of providing

reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

347

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1125.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1126.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1127.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1128.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1129.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

1130.   The Colorado Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1131.   The Colorado Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Colorado at Colo. Rev. Stat. § 4-2-101 et. seq.

1132.   GM is a "merchant" with respect to motor vehicles under the Colorado statute.

1133.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and

349

catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1134.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1135.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1136.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was

consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1137.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1138.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1139.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (COLO. REV. STAT. § 6-1-101 ET SEQ.)

1140.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1141.   The Colorado Consumer Protection Act (Colorado CPA) prohibits deceptive practices in the course of a person's business, including but not limited to "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce

351

the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105. Defendant's aforementioned conduct violated the Colorado CPA.

1142.   Defendants are a "person" under COLO. REV. STAT. § 6-1-102(6).

1143.   The Colorado Plaintiffs are "consumers" for purposes of COL. REV. STAT § 6-1-113(1)(a).

1144.   Defendants violated the Colorado CPA as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead. By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1145.   Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1146.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1147. Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

    b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

    c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

    d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

    e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

    f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

    g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

    h. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

1148.   Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1149.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1150.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1151.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1152.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1153.   Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants acted wantonly in causing the Plaintiffs' injuries, or with such a conscious indifference to the consequences that malice may be inferred.  Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Colorado CPA.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1154.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

354

1155.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1156.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1157.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1158.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CONNECTICUT

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

2.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

3.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

4.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

356

5.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

6.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

7.     GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

8.     The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

9.     As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

10.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D.

Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

11. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

12. Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs. The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

13. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

14.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

15.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Connecticut at Conn. Gen. Stat. § 42a-2-101 et. seq.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

16.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

17.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

18.     GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

19.     The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

20.     As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

21.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

22.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

23.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

24.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

25.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

26.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§

2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

27.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

28.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

29.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

30.     Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

31.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

32.     GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

33.     Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

34.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

35.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Connecticut at Conn. Gen. Stat. § 42a-2-101 *et. seq.*

36.     GM is a "merchant" with respect to motor vehicles under the Connecticut statute.

37.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

38.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

39.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability

despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

40.     Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

41.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

42.     GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

43.     Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form

of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION
### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### CONNECTICUT STAT. § 45.50.471, *et seq.*

44.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

45.     The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).  Defendant's aforementioned conduct violated this statute.

46.     Plaintiffs and Defendants are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

47.     Defendant's challenged conduct occurred in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

48.     Defendants violated the Connecticut UTPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

49.     Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

50.     Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

51.     Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.   Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.   Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

367

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

52.  Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

53.  Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

54.  These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

55.  As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

56.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

57.     Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants acted wantonly in causing the Plaintiffs' injuries, or with such a conscious indifference to the consequences that malice may be inferred.  Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Connecticut UTPA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

58.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

59.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

60.     Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of

Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

61.     As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

62.     Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## **FLORIDA**

### **FIRST CAUSE OF ACTION - AGAINST GM**
### **BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

63.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

64.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

65.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in

370

materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective

Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and

that repairs and other adjustments would be made by authorized dealers, without charge, to correct

defects in materials or workmanship which occurred during the first 8 years or 100,000 miles,

whichever came first.

66.     The vehicles were not as warranted and represented in that the vehicles have the

battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and

consumer complaints in possession of GM.

67.     As a result of their many defects, the subject vehicles cannot be reasonably relied

on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

68.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the

subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a

reasonable time after they discovered or should have discovered such breaches.

69.     GM has breached its express warranties by failing to adequately repair the subject

vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain

in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

requiring repair or replacement within the applicable warranty periods, and refused to honor the

warranties by providing free repairs or replacements during the applicable warranty periods

sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable

time.

70. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

71. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

72. Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

73. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

74. Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs. The

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

75.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

76.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

77.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Florida at Fla. Stat. § 672.101 et. seq.

78.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have

the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

79.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

80.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

81.     GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

82.     The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

83.     As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

84.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

85.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

86.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

87.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

88.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

89.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

90.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

91.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of

sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

92.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

93.     Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

94.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

95.     GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

96.     Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

97.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

98.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Florida at Fla. Stat. § 672.101 et. seq.

99.     GM is a "merchant" with respect to motor vehicles under the Florida statute.

100.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

101.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

378

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

102.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

103.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

104.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

105.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

106.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATIONS OF FLORIDA'S UNFAIR &
### DECEPTIVE TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, et seq.)

107.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

108.    Plaintiffs are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act (Florida UDTPA), Fla. Stat. § 501.203(7).

109.    Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

110.    The Florida UDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).  Defendants participated in unfair and deceptive trade practices that violated the Florida UDTPA as described herein.

380

111.    Defendants violated the Florida UDTPA as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

112.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

113.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

114.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

115.  Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

116.    These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

117.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

118.    As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

119.    Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants acted wantonly in causing the Plaintiffs' injuries, or with such a conscious indifference to the consequences that malice may be inferred.  Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Florida UDTPA.

**SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
FRAUDULENT CONCEALMENT/FRAUD BY OMISSION**

120.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

121.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the

promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

122.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

123.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

124.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>GEORGIA</u>

**FIRST CAUSE OF ACTION - AGAINST GM**
**BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

125.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

126.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

127.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

128.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

129.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

130.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

131.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

132.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

133.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

134.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

386

135.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

136.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

137.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

138.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

139.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Georgia at Ga. Code Ann. § 11-2-101 et. seq.

140.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

141.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

142.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

143.     GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods

388

sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

144.     The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

145.     As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

146.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

147.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

148.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

149.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

150.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

151.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

152.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit

for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

153.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

154.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

155.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present

their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

156.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

157.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

158.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

159.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

160.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Georgia at Ga. Code Ann. § 11-2-101 et. seq.

161.    GM is a "merchant" with respect to motor vehicles under the Georgia statute.

162.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

163.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

164.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

165.     Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording

Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

166.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

167.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

168.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**
**VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(GA. CODE. ANN § 10-1-370 ET SEQ.)**

169.    The Georgia Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

170.    Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10- 1-393(b). Defendants' aforementioned conduct violated this statute.

171.    Defendants and the Georgia Plaintiffs are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

172.    Defendants violated the Georgia UDTPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

173.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial

portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

174.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

175.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing   through   their   advertising,   warranties,   and   other   express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

396

f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

176. Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

177. These violations were not due to a bona fide error. Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

178. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles. Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

179. As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

397

180.    The Georgia Plaintiffs are entitled to recover, and hereby sue Defendant for, actual damages, plus attorney's fees and expenses of litigation per Ga. Code Ann. § 10-1-399(d) plus exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).  The Georgia Plaintiffs also sue Defendant for any other just and proper relief available under Georgia UDTPA per Ga. Code. Ann. § 10-1-399.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

181.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

182.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

183.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

184.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of

purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

185.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## IDAHO

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

186.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

187.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

188.    GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

189.    The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

190.    The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

191.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective

Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

192.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

193.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

194.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

195.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

196.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

197.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

198.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

199.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

200.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

201.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

202.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

203.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Idaho at Idaho Code § 28-2-101 et. seq.

204.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have

402

the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

205. As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

206. Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

207. GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition. GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

208. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

209. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

210.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

211.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

212.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

213.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

404

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

214.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

215.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

216.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

217.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time

of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

218.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

219.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

220.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

221.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

222.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

223.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

224.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Idaho at Idaho Code § 28-2-101 et. seq.

225.    GM is a "merchant" with respect to motor vehicles under the Idaho statute.

226.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

227.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

228.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

229.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

230.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

408

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

231. GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

232. Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
## (IDAHO CODE ANN. § 48-601 ET SEQ.)

233. The Idaho Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

234. The Idaho Consumer Protection Act (Idaho CPA) prohibits deceptive business practices, including but not limited to (1) representing that the Defective Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce. See IDAHO CODE ANN. § 48-603. Defendants' aforementioned conduct violated this statute.

409

235.    Defendants are a "person" under IDAHO CODE ANN. § 48-602(1).

236.    Defendants acts or practices as set forth above and below occurred in the conduct of "trade" or "commerce" under IDAHO CODE ANN. § 48-602(2).

237.    Defendants violated the Idaho CPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

238.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

239.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

240.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

241.     Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

242.     These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

243.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

244.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

245.     Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants acted wantonly in causing the Plaintiffs' injuries, or with such a conscious indifference to the consequences that malice may be inferred.  Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Idaho CPA.

**SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS**
**FRAUDULENT CONCEALMENT/FRAUD BY OMISSION**

246.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

247.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were

412

misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

248. Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

249. As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles. Plaintiffs hereby seek all such damages.

250. Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

413

## IOWA

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

251. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

252. Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

253. GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

254. The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

255. The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

256. Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

257. The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

258. As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

259. Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

260. GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition. GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

261. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

262. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

263.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

264.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

265.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

266.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

416

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

267.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

268.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Iowa at Iowa Code § 554.2101 *et. seq.*

269.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

270.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

271.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

272.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

273.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs'  acceptance of the subject vehicle.

274.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

275.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

418

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

276.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

277.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

278.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

279.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

280.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

281.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

282.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

283.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

284. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

285. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

286. GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

287. Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

288.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

289.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Iowa at Iowa Code § 554.2101 *et. seq.*

290.    GM is a "merchant" with respect to motor vehicles under the Iowa statute.

291.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

292.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

422

293.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

294.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

295.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

296.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

297.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**
**VIOLATION OF PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT**
**Iowa Code § 714H.1, *et seq.***

298.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

299.    The is a claim under the Consumer Frauds Act, Iowa Code § 714H.1, *et seq.,* which provides a private right of action for the plaintiffs herein.

300.    Defendants are a "person" as defined by Iowa Code § 714H.2(7).

301.    Plaintiffs are "consumers" as defined by Iowa Code § 714H.2(3).

302.    Iowa's Consumer Fraud Action (Iowa CFA) prohibits a person from engaging in an "unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code § 714H.3.

303.    Defendants violated the Iowa CFA as a result of their  manufacture and sale of

424

defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead. By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

304. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

305. Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

306. Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

> a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;
>
> b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

307.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

308.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

426

309.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

310.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

311.     Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants acted wantonly in causing the Plaintiffs' injuries, or with such a conscious indifference to the consequences that malice may be inferred.  Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Iowa CFA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

312.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

313.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

427

Defendants were under a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

314.     Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

315.     As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles. Plaintiffs hereby seek all such damages.

316.     Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>INDIANA</u>

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

317.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

318.     Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

319.     GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

320.     The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

321.     The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

322.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

323.     The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

324.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

325.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

326.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

327.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

328.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

329.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

430

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

330.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

331.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

332.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

333.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

334.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Indiana at Ind. Code § 26-1-2-101 *et. seq.*

335.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties   as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

336.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

337.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

338.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

432

requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

339.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs'  acceptance of the subject vehicle.

340.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

341.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

342.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints

they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

343.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

344.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

345.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

346.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

347.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

348.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

349.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

350.     Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording

Defendants a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

351.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

352.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

353.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

354.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

355.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Indiana at Ind. Code § 26-1-2-101 *et. seq.*

356.     GM is a "merchant" with respect to motor vehicles under the Iowa statute.

357.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

358.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

359.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

360.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

361.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

362.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

363.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
## (IND. CODE § 24-5-0.5-3)

364.     The Indiana Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint

365.     Indiana's Deceptive Consumer Sales Act (Indiana DCSA) prohibits a person from engaging in a "deceptive business practice[s]" or acts, including but not limited to "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; . . . (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." The DCSA further provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a). Defendant's conduct violated this statute.

439

366.    The Indiana Plaintiffs' vehicle purchases are "consumer transactions" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

367.    Defendants violated the Indiana DCSA as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead. By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

368.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

369.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

370.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

441

371. Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries

372. These violations were not due to a bona fide error. Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

373. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles. Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

374. As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

375. Pursuant to IND. CODE § 24-5-0.5-4, the Indiana Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each plaintiff, including treble damages up to $1,000 for Defendant's willfully deceptive acts. The Indiana Plaintiffs further seek reasonable attorney fees and costs per Ind. Code § 24-5-0.5-4. The Indiana Plaintiffs also seek punitive damages based on the outrageousness and recklessness of each Defendant's conduct.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

376. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

377.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

378.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

379.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

380.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## KANSAS

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

381.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

382.     Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

383.     GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

384.     The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

385.     The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

386.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

387.     The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

388.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

389.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

390.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

391.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

392.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

393.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

394.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

395.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

396.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

446

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

397.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

398.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Kansas at Kan. Stat. Ann. § 84-2-101 et. seq.

399.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

400.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

401.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

402.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

403.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

404.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

405.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

448

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

406.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

407.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

408.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

409.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

410.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

411.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

412.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

413.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

414.    Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

415.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

416.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

417.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

418.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

419.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Kansas at Kan. Stat. Ann. § 84-2-101 et. seq.

420.   GM is a "merchant" with respect to motor vehicles under the Kansas statute.

421.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

422.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

423.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were

the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements. As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs. *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

424. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

425. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

426. GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

427.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied

warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form

of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary

attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
(KAN. STAT. ANN. § 50-623 ET SEQ.)**

428.    Plaintiffs incorporate by reference all facts and allegations set forth in this

Complaint.

429.    The Kansas Consumer Protection Act (Kansas CPA) states "[n]o supplier shall

engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT.

ANN. § 50-626(a). Deceptive acts or practices include but are not limited to "the willful use, in

any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a

material fact" and "the willful failure to state a material fact, or the willful concealment,

suppression or omission of a material fact." KAN. STAT. ANN. § 50-626. Defendants'

aforementioned conduct violated this statute.

430.    The Kansas Plaintiffs are "consumers" within the meaning of KAN. STAT. ANN.

§ 50-624(b) who purchased or leased one or more Defective Vehicles.

431.    Each sale or lease of a Fraudulent Vehicle to the Kansas Plaintiffs was a "consumer

transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

432.    Defendants violated the Kansas CPA as a result of their  manufacture and sale of

defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety,

reliability and electric range of the vehicles, which conduct had the tendency or capacity to

454

mislead. By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

433. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

434. Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

435. Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

    b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

436. Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

437. These violations were not due to a bona fide error. Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

438.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

439.    As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

440.    Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants acted wantonly in causing the Plaintiffs' injuries, or with such a conscious indifference to the consequences that malice may be inferred.  Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Kansas CPA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

441.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

442.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

457

Defendants were under a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

443.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

444.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

445.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>LOUISIANA</u>

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

446.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

447.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

448.    GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

449.    The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

450.    The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

451.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

452.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

453.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

454.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

455.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

456.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

457.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

458.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

459. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

460. Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

461. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

462. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

463.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Louisiana at LSA-RS 51:1941 to LSA-RS 51:1948 et. seq.

464.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

465.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

466.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

467.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

468.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

469.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

470.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

471.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints

they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

472.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

473.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

474.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

475.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

464

476.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

477.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

478.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

479.    Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording

Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

480.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

481.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

482.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM
BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

483.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

484.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Louisiana at La.C.C. arts. 2475, 2476, 2520, 2524, 2529 et. seq.

485.     GM is a "merchant" with respect to motor vehicles under the Louisiana statute.

486.     GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

487.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

488.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

489.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

490.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

491.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

492.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**
**VIOLATION OF PRODUCTS LIABILITY ACT**
**La. Rev. Stat. § 9:2800.51,** *et seq.*

493.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

494.    This claim is for the Products Liability Act, La. Rev. Stat. § 9:2800.51, et seq. ("LPLA").

495.    Plaintiffs allege that Defendants defectively designed, manufactured, sold or otherwise placed in the stream of commerce Vehicles as set forth above.

496.    The Vehicles and batteries in question possess "unreasonably dangerous" characteristics as contemplated by LPLA for the following reasons:

a.    They are unreasonably dangerous in construction or composition as provided in LPLA. § 9:2800.55;

b.    They are unreasonably dangerous in design as provided in LPLA § 9:2800.56;

c.    They are unreasonably dangerous because an adequate warning about the Vehicles' batteries was not provided as required by LPLA § 9:2800.57; and

d.    They are unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product that render it unreasonably dangerous under LPLA § 9:2800.55, *et seq.*, that existed at the time the product left the control of the manufacturer.

497.    Defendants knew and expected for the Vehicles to eventually be sold to and operated by purchasers and/or eventual owners of the Vehicles, including the Louisiana Plaintiffs; consequently, the Louisiana Plaintiffs were an expected user of the Vehicles and their batteries.

498.    The Vehicles reached the Louisiana Plaintiffs without substantial changes in their condition from time of completion of manufacture.

499.    The defects in the Vehicles could not have been contemplated by any reasonable person expected to operate the Vehicles, and, therefore, presented an unreasonably dangerous situation for expected users of the Vehicles even though the Vehicles were operated by expected users in a reasonable manner.

500.    The Louisiana Plaintiffs' injuries arose from a "reasonably anticipated use" of the Vehicles, as contemplated by LPLA.

501.    As a direct and proximate cause of Defendants' design, manufacture, assembly, marketing, and sales of the Vehicles and their batteries, the Louisiana Plaintiffs have sustained and will continue to sustain the loss of use of his/her vehicle, economic losses and consequential damages.

502.    The Louisiana Plaintiffs allege the application of res ipsa loquitur under Louisiana Products Liability Law.

503.    The Louisiana Plaintiffs seek compensatory relief in accordance with the evidence, and a declaratory judgment that Defendants are liable to the Louisiana Plaintiffs for breach of its duty to design, manufacture, assemble, market, and sell a safe product, fit for its reasonably intended use.  The Louisiana Plaintiffs allege that the battery defects are the type of occurrences that would not happen in the absence of a defective product.

### SIXFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### REDHIBITION
### LA. Civ. Code Art. 2520, *et seq.* and 2545

504.    The Louisiana Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

505. The Louisiana Plaintiffs allege that Defendants defectively designed, manufactured, sold or otherwise placed in the stream of commerce the Vehicles, which are defective.

506. The battery defects are the type of occurrences which would not happen in the absence of a defective product.

507. Res ipsa loquitur applies under Louisiana law.

508. The Louisiana Plaintiffs allege that Defendants have known about safety hazards that result from the battery defects for several years, yet has failed to adequately address those safety concerns.

509. Defendants are responsible for damages caused by the failure of their products to conform to well-defined standards. In particular, the Vehicles contain vices or defects which render them useless, or their use so inconvenient and unsafe that a reasonable buyer would not have purchased or leased them.

510. Defendants manufactured, sold and promoted the Vehicles and their batteries and placed them into the stream of commerce.

511. Under Louisiana Law, the seller and manufacturer warrant the buyer against redhibitory defects or vices in things sold. LA. Code Civ. P. Art. 2520 et. seq.

512. The Vehicles as sold and promoted by Defendants possessed redhibitory defects because they were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which rendered the Vehicles useless or their use so inconvenient and unsafe that it must be presumed that a buyer would not have bought the vehicles had he/she known of the defects.

513.    The Vehicles did not conform to the express or implied warranties and representations made by Defendants.

514.    Pursuant to LA. Code Civ. P. Art. 2520, the Louisiana Plaintiffs are entitled to rescission of the sale of the Vehicle.

515.    The Vehicles alternatively possess redhibitory defects because the Vehicles were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which diminished the value of the Vehicles so that it must be presumed that a reasonable buyer would still have bought the vehicles, but for a lesser price, had the redhibitory defects been disclosed. In this instance, the Louisiana Plaintiffs are entitled to a reduction of the purchase price.

516.    As the manufacturer of the vehicles and batteries, under Louisiana Law, Defendants are  deemed to know that the Vehicles contained redhibitory defects pursuant to LA. Code Civ. P. Art. 2545. Defendants are liable as a bad faith seller for selling a defective product with knowledge of defects and thus is liable to the Louisiana Plaintiffs for the price of the Vehicles, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the Vehicles, and attorney's fees.

517.    As a proximate result of the defects and redhibitory vices in the Vehicles sold to the Louisiana Plaintiffs, they have suffered damages under Louisiana Law.

518.    The Louisiana Plaintiffs pray that this Honorable Court enter Judgment against Defendants for their compensatory and punitive damages, in whatever amount above $75,000.00 the Louisiana Plaintiffs are found to be entitled, together with interest, costs and attorney fees, plus such other and further relief as this Court deems appropriate.

472

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

519.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

520.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

521.     Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

522.     As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

523.     Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants

an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### SEVENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS VIOLATION OF LOUISIANA PRODUCTS LIABILITY ACT Liability Act (La. Rev. St. § 9.2800.51, et. seq.)

524.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein

525.    At all relevant times, Defendants defectively designed, manufactured, assembled, inspected, tested (or not), labeled, marketed, advertised, promoted, supplied, distributed, and/or sold the Vehicles that Plaintiffs purchased or leased.

526.    The Vehicles possess "unreasonably dangerous" characteristics as contemplated by LPLA for the following reasons:

a. They are unreasonably dangerous in construction or composition as provided in LPLA. § 9:2800.55;

b. They are unreasonably dangerous in design as provided in LPLA § 9:2800.56;

c. They are unreasonably dangerous because an adequate warning was not provided as required by LPLA § 9:2800.57.

d. Defendants knew and expected for the Vehicles to eventually be sold to and used by purchasers in Louisiana, including the Louisiana Plaintiffs; consequently, the Louisiana Plaintiffs were an expected user of the Vehicles.

e. The Vehicles reached the Louisiana Plaintiffs without substantial changes in their condition from time of completion of manufacture by JLI.

f. The defects in the Vehicles could not have been contemplated by any reasonable person expected to purchase the products and, therefore, presented an unreasonably

474

dangerous situation for expected users of the products even though the products were used by expected users in a reasonable manner.

g. The Louisiana Plaintiffs' injuries arose from a "reasonably anticipated use" of the JUUL products as contemplated by LPLA.

527. As a direct and proximate cause of JI's defective design, manufacture, assembly, marketing, and sales of the Vehicles, the Louisiana Plaintiffs have sustained economic losses, personal injuries and consequential damages.

528. The Louisiana Plaintiffs allege the application of res ipsa loquitur under Louisiana Products Liability Law.

529. The Louisiana Plaintiffs seek compensatory relief in accordance with the evidence.

## MARYLAND

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

530. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

531. Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

532. GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

533. The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

534. The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

475

535.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

536.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

537.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

538.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

539.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the

warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

540.     The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

541.     As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

542.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

543.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

544.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

545.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

546.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

547.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Maryland at Md. Code Ann., Com. Law § 2-101 et. seq.

548.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and

478

that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

549.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

550.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

551.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

552.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

553.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

554.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

555.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

556.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining

power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

557.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

558.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

559.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

560.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

561.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

562.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

563.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

564.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

482

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

565.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

566.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

567.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

568.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Maryland at Md. Code Ann., Com. Law § 2-101 et. seq.

569.    GM is a "merchant" with respect to motor vehicles under the Maryland statute.

570.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and

483

catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

571.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

572.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

573.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was

484

consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

574.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

575.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

576.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
**(MD. CODE ANN., COM. LAW § 13-101 ET SEQ.)**

577.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

578.    The Maryland Consumer Protection Act (Maryland CPA) provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive" and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment,

suppression, or omission of any material fact with the intent that a consumer rely on the same," MD. CODE ANN., COM. LAW § 13-301, regardless of whether the consumer is actually deceived or damaged, MD. CODE ANN., COM. LAW § 13-302. Defendant's aforementioned conduct violated this statute.

579. Defendants and the Maryland Plaintiffs are "persons" within the meaning of MD. CODE ANN., COM. LAW § 13-101(h).

580. Defendants violated the Maryland CPA as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead. By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

581. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

582. Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

583.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

584.     Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

585.     These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

586.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

587.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

588.     Pursuant to MD. CODE ANN., COM. LAW § 13-408, the Maryland Plaintiffs seek actual damages, punitive damages, attorneys' fees and costs, and any other just and proper relief available under the Maryland CPA.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

589.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

590.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were

misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

591.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

592.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

593.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## MASSACHUSETTS

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

594.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

595.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

596.    GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

597.    The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

598.    The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

599.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

600.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

601.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

602.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

603.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

604.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

605.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

606.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

607.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

608.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

609.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

610.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

611.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Massachusetts at Mass. Gen. Laws Ch. 106, § 2-101 et. seq.

612.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

613.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

614.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

615.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

616.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

617.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

618.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

494

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

619.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

620.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

621.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## THIRD CAUSE OF ACTION - AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
## MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

622.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

623.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

624.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

625.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

626.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig.,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

627.     Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

628.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

629.     GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

630.     Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

631.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiffs sue Defendant for actual damages in an amount to be determined at trial. Because Defendant's conduct was committed willfully and knowingly, the Massachusetts Plaintiffs are entitled to recover for each Plaintiff, and hereby sue Defendants for, up to three times actual damages, but no less than two times actual damages.  The Massachusetts Plaintiffs further sue Defendant for reasonable attorney's fees and costs per Mass. Gen. Laws ch. 93A, § 9 plus any other relief available under the Massachusetts Act.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

632.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

633.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Massachusetts at Mass. Gen. Laws Ch. 106, § 2-101 et. seq.

634.    GM is a "merchant" with respect to motor vehicles under the Maryland statute.

635.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

636.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

637.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

638.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

639.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

640.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

641.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**
**VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A)**
**(MASS. GEN. LAWS CH. 93A, § 1 ET SEQ.)**

642.    The Massachusetts Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

643.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Defendants violated the Massachusetts Act.

644.    Defendants and the Massachusetts Plaintiffs are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

500

645.     Defendants were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

646.     Defendants violated the Massachusetts Act as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

647.     Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

648.     Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

649.     Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

650.     Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

651.     These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

652.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

653.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

654.     Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiffs sue Defendant for actual damages in an amount to be determined at trial. Because Defendant's conduct was committed willfully and knowingly, the Massachusetts Plaintiffs are entitled to recover for each Plaintiff, and hereby sue Defendants for, up to three times actual damages, but no less than two times actual damages.  The Massachusetts Plaintiffs further sue Defendant for reasonable attorney's fees and costs per Mass. Gen. Laws ch. 93A, § 9 plus any other relief available under the Massachusetts Act.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

655.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

503

656.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

657.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

658.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

659.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## MINNESOTA

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY
## ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

660.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

661.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

662.    GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

663.    The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

664.    The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

665.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

666.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

667.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

668.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

669.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

670.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

671.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

672.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

673.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

674.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

675.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
### BREACH OF EXPRESS WARRANTY

676.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

677.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Minnesota at Minn. Stat. § 336.2-101 *et. seq.*

678.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

679.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

680.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

681.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

682.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

683.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

684.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

509

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

685.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

686.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

687.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

688.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

689.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

690.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

691.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

692.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

693.     Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

694.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

695.     GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

696.     Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

697.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

698.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Minnesota at Minn. Stat. § 336.2-101 *et. seq.*

699.   GM is a "merchant" with respect to motor vehicles under the Minnesota statute.

700.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

701.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

702.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were

the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

703.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

704.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

705.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

706.     Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT
### (MINN. STAT. § 325D.43-48 ET SEQ.)

707.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

708.     The Minnesota Deceptive Trade Practices Act (Minnesota DTPA) prohibits deceptive trade practices, which include "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1). Defendants' aforementioned conduct violated this statute.

709.     Defendants violated the Minnesota DTPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

515

710.     Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

711.     Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

712.     Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.   Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.   Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

516

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not

reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness

for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied

by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a

right, benefit, or immunity provided by law, without clearly stating the waiver and

obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce,

Plaintiffs to purchase or lease their Chevy Bolt vehicles.

713.   Plaintiffs reasonably relied on Defendants' material misrepresentations and

omissions concerning the Vehicles and their batteries.

714.   These violations were not due to a bona fide error.  Defendants engaged in the same

unfair and deceptive acts or practices in connection with the sale or lease of numerous model years

of Chevy Bolt vehicles.

715.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices,

the Plaintiffs have suffered and will continue to suffer actual damages, including economic

damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs

known that the Vehicles would be equipped with defective electric batteries, they would not have

purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

517

716.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

717.     Pursuant to MINN. STAT. § 8.31(3a), the Minnesota Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

718.     The Minnesota Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights of others.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

719.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

720.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

721.     Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of

Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

722.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

723.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>MISSOURI</u>

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

724.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

725.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

726.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

727.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

728.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

519

729.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

730.     The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

731.     As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

732.     Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

733.     GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the

warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

734.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

735.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

736.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

737.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

738.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

739.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

740.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

741.     Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Missouri at Mo. Rev. Stat. § 400.2-101 et. seq.

742.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and

that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

743.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

744.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

745.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

746.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

747.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

748.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

749.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

750.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining

power existed between GM and the Plaintiffs because GM knew or should have known that the

Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

751.    Furthermore, the limited warranty promising to repair and/or correct a

manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the

promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

752.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

set forth herein.

753.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty

Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§

2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products"

within the meaning of 15 U.S.C. § 2301(1).

754.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and

any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit

for such use. This implied warranty included, among other things: (i) a warranty that the vehicles

were safe and reliable for providing transportation, and would not experience premature and

catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended

use while being operated.

755.    The Defective Vehicles were and are not fit for their ordinary purpose of providing

reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

525

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

756.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

757.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

758.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

759.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

760.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

761.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

762.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Missouri at Mo. Rev. Stat. § 400.2-101 et. seq.

763.    GM is a "merchant" with respect to motor vehicles under the Missouri statute.

764.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended

use while being operated.

765.     The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

766.     Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements. As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

767.     Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were

insufficient.").

768.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

769.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

770.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. § 407.010, *et seq.*)

771.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

772.    Defendants and Plaintiffs are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

773.    Defendant engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

774.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.   Defendants intentionally violated the Missouri MPA.

775.    Defendants violated the Missouri MPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

776.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

777.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

778.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.   Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.   Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

779.    Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

780.    These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

781.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

782.    As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

783.    Defendants are liable, and Plaintiffs hereby sue, for actual damages, including economic and non-economic damages (including, without limitation, damages for embarrassment, humiliation, inconvenience, mental anguish and emotional distress) in amounts to be proven at trial plus attorneys' fees and costs per Mo. Rev. Stat. § 407.025(1) plus punitive damages plus any other just and proper relief under Mo. Rev. Stat. § 407.025.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

784.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

785.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

786.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

787.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

788.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## NEBRASKA

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

789.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

790.     Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

791.     GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

792.     The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

793.     The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

794.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

795.     The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

796.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

797.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

798.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

799.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

800.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

801.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

802.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

803.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

804.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

805.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

806.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Nebraska at Neb. Rev. Stat. U.C.C. § 2-101 et. seq.

807.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

808.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

809.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

810.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

811.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

812.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

813.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

538

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

814.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

815.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

816.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## THIRD CAUSE OF ACTION - AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

817.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

818.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

819.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

820.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

821.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

822.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

823.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

824.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

825.    Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

826.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

827.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Nebraska at Neb. Rev. Stat. U.C.C. § 2-101 et. seq.

828.   GM is a "merchant" with respect to motor vehicles under the Nebraska statute.

829.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

830.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

831.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were

542

the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

832.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

833.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

834.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

835.     Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT. § 59-1601 ET SEQ.)

836.     The Nebraska Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

837.     The Nebraska Consumer Protection Act (Nebraska CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.  Defendant's aforementioned conduct violated this statute.

838.     Defendants and the Nebraska Plaintiffs are "person[s]" under NEB. REV. STAT. § 59-1601(1).

839.     Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

840.     Defendants violated the Nebraska CPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

544

841.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

842.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

843.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

545

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

844.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

845.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

846.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

847.     As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

848.     Because Defendants' conduct caused injury to the Nebraska Plaintiffs' property through violations of the Nebraska CPA, the Nebraska Plaintiffs seek recovery of actual damages as well as enhanced damages up to $1,000, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under NEB. REV. STAT. § 59-1609.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

849.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

850.     Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

851.     Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

852.     As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

853.     Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## NEW MEXICO

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

854.     Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

855.     Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

856.     GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

857.     The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

858.     The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

859.     Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles,

including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

860.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

861.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

862.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

863.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

864.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

865.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

866.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

867.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

868.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The

550

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

869. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### SECOND CAUSE OF ACTION – AGAINST GM
### BREACH OF EXPRESS WARRANTY

870. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

871. Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by New Mexico at N.M. Stat. Ann. § 55-2-101 *et. seq.*

872. Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first. The vehicles were not as warranted and represented in that the vehicles have

the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

873.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

874.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

875.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

876.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

877.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

878.     Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

879.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including PlaintiffS.

880.     Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

881.     Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## THIRD CAUSE OF ACTION - AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
## MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

882.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

883.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

884.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

885.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time

of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

886.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

887.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

888.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

889.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

890.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

<h3 style="text-align:center">FOURTH CAUSE OF ACTION – AGAINST GM<br>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</h3>

891.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

892.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by New Mexico at N.M. Stat. Ann. § 55-2-101 *et. seq.*

893.   GM is a "merchant" with respect to motor vehicles under the New Mexico statute.

894.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

895.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

556

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

896.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

897.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

898.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

899.     GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

900.     Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION  - AGAINST ALL DEFENDANTS
### VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)

901.     The New Mexico Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

902.     The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. § 57-12-2(D).  Defendant's aforementioned conduct violated this statute.

903.   Defendants and the New Mexico Plaintiffs are "person[s]" under N.M. STAT. ANN. § 57-12-2 in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

904.   Defendants violated the New Mexico UTPA as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

905.   Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

906.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

907.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

908.    Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

909.    These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

910.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

911.    As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

912.    Because Defendants' unconscionable, willful conduct caused actual harm to the New Mexico Plaintiffs, the New Mexico Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. STAT. ANN. § 57-12-10.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

913.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

914.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were

misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

915. Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

916. As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles. Plaintiffs hereby seek all such damages.

917. Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## **NEW YORK**

## **FIRST CAUSE OF ACTION - AGAINST GM**
## **BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

918.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

919.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

920.    GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

921.    The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

922.    The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

923.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

924.    The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

925. As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

926. Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

927. GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition. GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

928. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

929. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

930.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

931.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

932.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

933.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

934.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

935.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by New York at N.Y. U.C.C. Law § 2-101 et. seq.

936.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

937.    As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

938.    Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

939.    GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

940.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

941.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

942.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

943.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

944.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

945.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

946.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

568

947.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

948.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

949.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

950.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

951.     Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

952.     In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

953.     GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

954.     Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

955.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

956.    Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by New York at N.Y. U.C.C. Law § 2-101 et. seq.

957.    GM is a "merchant" with respect to motor vehicles under the New York statute.

958.    GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

959.    The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

960.    Plaintiffs purchased their vehicles from a network of authorized GM dealers, were

the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

961.    Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

962.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

963.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

964.     Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### NEW YORK STAT. § 45.50.471, *et seq.*

965.     The New York Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

966.     The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 349. Defendant's aforementioned conduct violated this statute.

967.     The New York Plaintiffs are "persons" within the meaning of N.Y. GEN. BUS. LAW § 349(h).

968.     Defendants are a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349.

969.     Defendants violated the New York GBL as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

573

970.    Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

971.    Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

972.    Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

  a.   Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

  b.   Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

  c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

  d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

574

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

973.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

974.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

975.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

976.    As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

977.    Because Defendants' willful and knowing conduct caused injury to the New York Plaintiffs, the New York Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

978.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

979.    Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

980.    Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

981.    As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

982.    Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>NORTH CAROLINA</u>

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

983.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

984.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

985.    GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

986.    The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

987.    The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

988.    Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles,

including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

989. The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

990. As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

991. Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

992. GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition. GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

993.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

994.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

995.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

996.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

997.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

998.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

999.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1000.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by North Carolina at N.C. Gen. Stat. § 25-2-101 *et. seq.*

1001.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have

580

the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1002. As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1003. Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1004. GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition. GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1005. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1006. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1007.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1008.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1009.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1010.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1011.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1012.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1013.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1014.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time

583

of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1015.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.   *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1016.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.   *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1017.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1018.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1019.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1020.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1021.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by North Carolina at N.C. Gen. Stat. § 25-2-101 *et. seq.*

1022.   GM is a "merchant" with respect to motor vehicles under the North Carolina statute.

1023.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1024.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

585

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1025.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1026.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1027.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

586

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1028.    GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1029.    Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT
### (N.C. GEN. STAT. § 75-1.1 ET SEQ.)

1030.   The North Carolina Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1031.   North Carolina's Unfair and Deceptive Acts and Practices Act (the North Carolina Act) broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). Defendant's aforementioned conduct violated this statute.

1032.   Defendants engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

1033.   Defendants violated the North Carolina Act as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to

mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1034.  Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1035.  Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1036.  Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

  a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

  b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

    c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

    d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

    e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

    f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

    g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

    h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1037.  Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1038.  These violations were not due to a bona fide error. Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1039.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1040.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1041.   The North Carolina Plaintiffs seek monetary relief for their actual damages, an order for treble their actual damages, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. GEN. STAT. § 75-16.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1042.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1043.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1044. Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1045. As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles. Plaintiffs hereby seek all such damages.

1046. Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## OHIO

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1047. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1048. Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1049. GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1050. The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1051.  The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

1052.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1053.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1054.  As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1055.  Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1056.  GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain

in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1057.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1058.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1059.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1060.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints

they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1061.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1062.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1063.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1064.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Ohio at Ohio Rev. Code Ann. § 1302.01 *et. seq.*

1065.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in

materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective

Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and

that repairs and other adjustments would be made by authorized dealers, without charge, to correct

defects in materials or workmanship which occurred during the first 8 years or 100,000 miles,

whichever came first.  The vehicles were not as warranted and represented in that the vehicles have

the battery defects or conditions described above, as well as defects or conditions as reflected in

the various repair orders, technical service bulletins, special service messages, recall documents

and consumer complaints in possession of GM.

1066.   As a result of their many defects, the subject vehicles cannot be reasonably relied

on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1067.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the

subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a

reasonable time after they discovered or should have discovered such breaches.

1068.   GM has breached its express warranties by failing to adequately repair the subject

vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain

in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

requiring repair or replacement within the applicable warranty periods, and refused to honor the

warranties by providing free repairs or replacements during the applicable warranty periods

sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable

time.

1069.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1070.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1071.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1072.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1073.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1074.  Furthermore,  the  limited  warranty  promising  to  repair  and/or  correct  a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1075.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1076.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1077.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and

catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1078.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1079.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1080.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was

598

consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1081.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1082.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1083.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1084.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1085.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Ohio at Ohio Rev. Code Ann. § 1302.01 *et. seq.*

1086.   GM is a "merchant" with respect to motor vehicles under the Ohio statute.

1087.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1088.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1089.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1090.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is

persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1091.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1092.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1093.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### OHIO STAT. § 45.50.471, *et seq.*

1094.   The Ohio Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1095.   Defendants are a "supplier" as that term is defined in OHIO REV. CODE ANN. § 1345.01(C).

1096.   The Ohio Plaintiffs are "consumers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(D), and their purchase or lease of one or more Vehicles is a "consumer transaction" within the meaning of OHIO REV. CODE ANN. § 1345.01(A).

1097.   The Ohio Consumer Sales Practices Act (Ohio CSPA), OHIO REV. CODE ANN. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer. OHIO REV. CODE ANN. § 1345.02. Defendants' aforementioned conduct violated this statute.

1098.   Defendants violated the Ohio CSPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1099. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and

602

advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1100.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1101.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

    b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

    c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

    d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

    e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

    f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

    g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

    h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1102.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1103.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1104.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1105.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1106. As a result of the foregoing wrongful conduct, the Ohio Plaintiffs have been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual and statutory damages, treble damages, court costs, and reasonable attorneys' fees, pursuant to OHIO REV. CODE ANN. § 1345.09 et seq.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1107. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1108. Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1109. Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1110. As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of

purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1111.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## OKLAHOMA

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1112.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1113.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1114.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1115.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1116.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

1117.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high

voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1118.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1119.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1120.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1121.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1122.    The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1123.    As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1124.    Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1125.    In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1126.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1127. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**SECOND CAUSE OF ACTION – AGAINST GM
BREACH OF EXPRESS WARRANTY**

1128. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1129. Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Oklahoma at Okla. Stat. Tit. 12A, § 2-101 et. seq.

1130. Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first. The vehicles were not as warranted and represented in that the vehicles have

609

the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1131.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1132.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1133.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1134.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1135.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1136.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1137.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1138.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1139. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1140.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1141.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1142.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1143.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time

of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1144.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1145.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1146.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1147.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1148.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1149.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1150.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Oklahoma at Okla. Stat. Tit. 12A, § 2-101 et. seq.

1151.   GM is a "merchant" with respect to motor vehicles under the Oklahoma statute.

1152.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1153.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1154.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs. *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1155.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1156.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1157.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1158.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
## (OKLA. STAT. TIT. 15, § 751 ET SEQ.)

1159.   The Oklahoma Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1160.   The Oklahoma Consumer Protection Act (Oklahoma CPA) declares unlawful, inter alia, the following acts or practices when committed in the course of business: making a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person" and "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. TIT. 15, §§ 752–753. Defendant's aforementioned conduct violated this statute.

1161.   The Oklahoma Plaintiffs are "persons" under OKLA. STAT. TIT. 15, § 752.

616

1162.   Defendants are a  "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15, § 15-751(1).

1163.   The sale or lease of a Vehicle to each Oklahoma Plaintiff was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15, § 752 and Defendant's actions as set forth herein occurred in the conduct of trade or commerce.

1164.   Defendants violated the Oklahoma CPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1165.  Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1166.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1167.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a.   Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

    b.   Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

    c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

    d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

    e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

    f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

    g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

    h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1168.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1169.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1170.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1171.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1172.   Because Defendants' unconscionable conduct caused injury to the Oklahoma Plaintiffs, the Oklahoma Plaintiffs seek recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees and costs, under OKLA. STAT. TIT. 15, § 761.1. The Oklahoma Plaintiffs further seek any other just and proper relief available under the Oklahoma CPA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1173.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1174.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1175.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1176.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1177.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## OREGON

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1178.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1179.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1180.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1181.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1182.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively

1183.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1184.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1185.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1186.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1187.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1188.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1189.  As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1190.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1191.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1192.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1193. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1194.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1195.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Oregon at Or. Rev. Stat. § 72.1010 et. seq.

1196.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1197.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1198.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1199.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1200.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1201.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1202.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

625

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1203.  In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1204.  Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1205.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## THIRD CAUSE OF ACTION - AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1206.  Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1207.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1208.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1209.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1210.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1211.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1212.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1213.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1214.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FOURTH CAUSE OF ACTION – AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1215.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1216.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Oregon at Or. Rev. Stat. § 72.1010 et. seq.

1217.   GM is a "merchant" with respect to motor vehicles under the Oregon statute.

1218.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1219.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1220.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were

the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1221.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1222.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1223.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1224.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (Or. Rev. Stat. §§ 646.605, et seq.)

1225.   The Oregon Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1226.   The Oregon Plaintiffs have complied with all applicable, pre-suit notice letter provisions, if any.

1227.   Defendants and the Oregon Plaintiffs are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

1228.   Defendants are engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

1229.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce …." Or. Rev. Stat. § 646.608(1).  Defendant violated the Oregon UTPA because, among other reasons, they (1) "[r]epresented that . . . goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the . . . goods or . . . do not have;"  (2) "[r]epresented that … goods … are of a particular standard, quality, or grade, [when] the …. goods … were of another;" (3) "advertise[d] …. goods …. with intent not to provide … goods …. as advertised;" (4) "[c]oncurrent with tender or delivery of. .. ., goods . . . fail[ed] to disclose any known material defect or material nonconformity;" (5) [e]ngaged

in . . . unfair or deceptive conduct in trade or commerce. Or. Rev. Stat. § 646.608(1)(e), (g), (i), (t), (u).

1230.   Defendants violated the Oregon UTPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1231.   Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1232.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1233.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

    b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

    c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

    d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

    e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

    f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

    g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

    h. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1234.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1235.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1236.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1237.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1238.   Pursuant to Or. Rev. Stat. § 646.638, the Oregon Plaintiffs hereby sue Defendants for actual damages, including economic and non-economic damages (including, without limitation, damages for embarrassment, humiliation, inconvenience, mental anguish and emotional distress) plus punitive damages plus attorneys' fees and costs per Or. Rev. Stat. § 646.638(3) plus any other just and proper relief available under the Oregon UTPA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1239.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1240.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were

misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1241. Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1242. As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles. Plaintiffs hereby seek all such damages.

1243. Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PENNSYLVANIA

## FIRST CAUSE OF ACTION - AGAINST GM
## BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1244.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1245.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1246.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1247.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1248.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1249.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1250.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1251.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1252.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1253.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1254.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1255.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1256.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1257.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1258.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1259. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### SECOND CAUSE OF ACTION – AGAINST GM
### BREACH OF EXPRESS WARRANTY

1260.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1261.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Pennsylvania at Pa. Cons. Stat. § 2101 et. seq.

1262.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1263.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1264.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1265.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1266.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1267.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1268.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1269.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1270.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1271.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1272.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1273.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1274.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1275.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1276.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1277.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1278.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1279.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1280.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1281.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1282.  Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Pennsylvania at Pa. Cons. Stat. § 2101 et. seq.

1283.  GM is a "merchant" with respect to motor vehicles under the Pennsylvania statute.

1284.  GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1285.  The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1286.  Plaintiffs purchased their vehicles from a network of authorized GM dealers, were

644

the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1287.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1288.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1289.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1290.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION LAW (73 PA. CONS. STAT. § 201-1 ET SEQ.)

1291.   The Pennsylvania Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1292.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including representing that goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4). Defendants' aforementioned conduct violated this statute.

1293.   Defendants and the Pennsylvania Plaintiffs are "persons" within the meaning of 73 PA. CONS. STAT. § 201-2(2).

1294.   The Pennsylvania Plaintiffs purchased or leased Defective Vehicles primarily for personal, family, or household purposes within the meaning of 73 PA. CONS. STAT. § 201-9.2.

1295.   All of the acts complained of herein were perpetrated by Defendants in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. § 201-2(3).

646

1296.   Defendants violated the Pennsylvania CPL as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1297. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1298.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1299.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

      a.   Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1300.  Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1301.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1302.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1303.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1304.   Defendants are liable to the Pennsylvania Plaintiffs for their actual damages, treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 PA. CONS. STAT. § 201-9.2(a). The Pennsylvania Plaintiffs are also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.  The Pennsylvania Plaintiffs further seek any other just and proper relief available under the Pennsylvania CPL.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1305.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1306.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries.

Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1307.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1308.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1309.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>RHODE ISLAND</u>

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1310.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1311.  Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1312.  GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1313.  The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1314.  The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1315.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1316.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1317.  As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1318. Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1319. GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition. GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1320. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1321. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1322. Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations

652

the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1323.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1324.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1325.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1326.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1327.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Rhode Island at R.I. Gen. Laws § 6A-2-101 *et. seq.*

1328.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1329.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1330.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1331.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1332.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1333.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1334.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g.*, *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1335.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints

they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1336.    Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1337.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1338.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein

1339.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1340.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1341.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1342.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1343.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording

Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1344.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

1345.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

1346.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1347.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1348.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Rhode Island at R.I. Gen. Laws § 6A-2-101 *et. seq.*

1349.   GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1350.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1351.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1352.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs. *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1353.   Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1354.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1355.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1356.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### RHODE ISLAND STAT. § 45.50.471, *et seq.*

1357.   The Rhode Island Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1358.   Rhode Island's Unfair Trade Practices and Consumer Protection Act (Rhode Island CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including "[e]ngaging in any act or practice that is unfair or deceptive to the consumer" and "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. GEN. LAWS § 6-13.1-1(6). Defendant's aforementioned conduct violated this statute.

1359.   Defendants and the Rhode Island Plaintiffs are "persons" within the meaning of R.I. GEN. LAWS § 6-13.1-1(3).

1360.   Defendants were engaged in "trade" and "commerce" within the meaning of R.I. GEN. LAWS § 6-13.1-1(5).

1361.   The Rhode Island Plaintiffs purchased or leased Vehicles primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6- 13.1-5.2(a).

1362.   Defendants violated the Rhode Island CPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

661

1363. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1364. Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1365. Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

    b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

    c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

    d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

     e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

     f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

     g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

     h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1366.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1367.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1368.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1369.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1370.   Pursuant to R.I. Gen. Laws § 6-13.1-5.2(a), the Rhode Island Plaintiffs hereby sue Defendants to recover their actual damages plus attorneys' fees and costs plus any other just and proper relief under Rhode Island DTPA. The Rhode Island Plaintiffs also sue for punitive damages because Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1371.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1372.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1373.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of

Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1374.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1375.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## SOUTH CAROLINA

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1376.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1377.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1378.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1379.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1380.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

665

1381.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1382.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1383.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1384.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1385.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the

warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1386. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1387. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1388. Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1389. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1390.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1391. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1392.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1393.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by South Carolina at S.C. Code Ann. § 36-2-101 *et. seq.*

1394.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and

that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1395.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1396.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1397.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1398.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1399.  As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1400.  Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1401.  In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1402.  Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining

power existed between GM and the Plaintiffs because GM knew or should have known that the

Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1403.   Furthermore, the limited warranty promising to repair and/or correct a

manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the

promised remedies within a reasonable time.

## THIRD CAUSE OF ACTION - AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE
## MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1404.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

set forth herein

1405.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty

Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§

2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products"

within the meaning of 15 U.S.C. § 2301(1).

1406.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and

any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit

for such use. This implied warranty included, among other things: (i) a warranty that the vehicles

were safe and reliable for providing transportation, and would not experience premature and

catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended

use while being operated.

1407.   The Defective Vehicles were and are not fit for their ordinary purpose of providing

reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1408.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1409.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1410.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

672

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

1411.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

1412.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

1413.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1414.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by South Carolina at S.C. Code Ann. § 36-2-101 *et. seq.*

1415.   GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1416.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and

673

catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1417.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1418.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1419.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was

consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1420. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1421. GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1422. Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. CODE ANN. § 39-5-10 ET SEQ.)

1423. The South Carolina Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1424. The South Carolina Unfair Trade Practices Act (South Carolina UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39-5-20(a). Defendant's aforementioned conduct violated this statute.

1425. Each Defendant is a "person" under S.C. CODE ANN. § 39-5-10. 622.

675

1426.   Defendants violated the South Carolina Island UTPA as a result of their manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1427.   Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1428.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1429.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1430.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1431.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1432.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1433.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1434.   Pursuant to S.C. CODE ANN. § 39-5-140(a), the South Carolina Plaintiffs seek monetary relief to recover their economic losses. Because Defendants' actions were willful and knowing, the South Carolina Plaintiffs' damages should be trebled.  The South Carolina Plaintiffs further seek attorneys' fees and costs plus any other just and proper relief available under the South Carolina UTPA.

1435.   The South Carolina Plaintiffs further allege that Defendants' malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights of others. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1436.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1437.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1438.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1439.  As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1440.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**TENNESSEE**

**FIRST CAUSE OF ACTION - AGAINST GM**
**BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY**
**ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1441.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1442.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1443.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1444.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1445.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1446.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1447.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the

various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1448.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1449.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1450.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1451.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1452.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1453.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1454.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1455.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1456. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1457.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1458.  Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Tennessee at Tenn. Code Ann. § 47-2-101 et. seq.

1459.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1460.  As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1461.  Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1462.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1463.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1464.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1465.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1466.  In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1467.  Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1468.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1469.  Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein

1470.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1471.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1472.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1473.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*,

633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1474. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1475. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

1476. GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

1477. Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject

vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1478.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1479.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Tennessee at Tenn. Code Ann. § 47-2-101 et. seq.

1480.   GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1481.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1482.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1483.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1484.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1485.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1486.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1487.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977**
**(Tenn. Code Ann. § 47-18-101, et seq.)**

1488.   The Tennessee Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1489.   The Tennessee Plaintiffs are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2). Defendant is a "person" within the meaning of Tenn. Code § 47-18-103(9).

1490.   Defendants are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

1491.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.  The Tennessee CPA prohibits (1) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods; (2) representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; (3) representing that goods are of a particular standard, quality or grade if they are of another;

(4) advertising goods with intent not to sell them as advertised; (5) engaging in any other act or practice which is deceptive to the consumer or to any other person. Tenn. Code § 47-18-104(b)(2), (5),  (7), (9), (27).  Defendant intentionally violated the aforementioned provisions of the Tennessee CPA.

1492.  Defendants violated the Tennessee CPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1493.  Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1494.  Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1495.  Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c. Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d. At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e. Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g. Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

692

1496.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1497.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1498.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1499.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1500.   Pursuant to Tenn. Code § 47-18-109, the Tennessee Plaintiffs hereby sue Defendant for actual damages plus treble damages for willful and knowing violations, pursuant to § 47-18-109(a)(3), plus punitive damages plus attorneys' fees and costs per Tenn. Code § 47-18-109(e)(1), plus any other just and proper relief to the extent available under the Tennessee CPA.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1501.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1502.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries.

Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein

1503.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1504.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1505.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## UTAH

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1506.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

694

1507.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1508.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1509.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1510.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1511.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1512.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1513.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1514.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1515.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1516.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1517.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1518.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations

696

the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1519.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1520.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1521.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### SECOND CAUSE OF ACTION – AGAINST GM
### BREACH OF EXPRESS WARRANTY

1522.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1523.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Utah at Utah Code Ann. § 70A-2-101 et. seq.

1524.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties   as defined in 15 U.S.C. § 2301(6).   Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1525.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1526.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1527.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1528.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1529.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1530.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1531.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints

they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1532. Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs. The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1533. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1534. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein

1535. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1536.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1537.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1538.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1539.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording

Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1540.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

1541.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

1542.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1543.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1544.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Utah at Utah Code Ann. § 70A-2-101 et. seq.

1545.   GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1546.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1547.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1548.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1549.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1550.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1551.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1552.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### UTAH CODE ANN. § 13-11, *et seq.*

1553.  The Utah Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1554.  The Utah Consumer Sales Practices Act (Utah CSPA) makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including but not limited to indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; and "indicat[ing] that a specific price advantage exists, if it does not." UTAH CODE ANN. § 13-11- Defendants' aforementioned conduct violated this statute.

1555.   Defendants knew, or had reason to know, that consumers would rely on their failure to disclose the defects in its transmission system. Defendants therefore engaged in an unconscionable act within the meaning of UTAH CODE ANN. § 13-11-5.

1556.  Defendants violated the Utah CSPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1557. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and

advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1558.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1559.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

    a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

    b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

    c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

    d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

    e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1560.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1561.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1562.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1563.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1564.   Pursuant to the Utah CSPA, the Utah Plaintiffs hereby sue Defendant for actual damages. The Utah Plaintiffs further sue Defendant for punitive damages plus attorneys' fees and court costs per Utah Code § 13-11-19 plus any other just and proper relief to the extent available under the Utah CPSA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1565.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1566.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

1567.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1568.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of

purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective

Vehicles.  Plaintiffs hereby seek all such damages.

1569.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants

an assessment of punitive damages in an amount sufficient to deter such conduct in the future,

which amount is to be determined according to proof.

### **<u>VERMONT</u>**

### **FIRST CAUSE OF ACTION - AGAINST GM**
### **BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1570.  Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

set forth herein.

1571.  Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1572.  GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1573.  The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because

they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or

primarily for personal use.

1574.  The Vehicles were sold with a "written warranty" and/or a "service contract" as

those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1575.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express

warranties  as  defined  in  15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and

lessees of the Defective Vehicles with an express written warranty that covered the Vehicles,

including but not limited to the battery, and GM warranted the Vehicle to be free of defects in

materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective

Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1576. The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1577. As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1578. Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1579. GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition. GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

710

1580. The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1581. As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1582. Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1583. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1584. Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1585. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1586. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1587. Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Vermont at Vt. Stat. Ann. Tit. 9A, § 2-101 *et. seq.*

1588. Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first. The vehicles were not as warranted and represented in that the vehicles have

the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1589.  As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1590.  Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1591.  GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1592.  The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1593.  As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1594.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1595.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1596.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1597. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1598. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein

1599. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1600. GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1601. The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time

715

of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1602. Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements. As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs. *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1603. Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1604. In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

716

1605.  GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FOURTH CAUSE OF ACTION – AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

1606.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1607.  Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Vermont at Vt. Stat. Ann. Tit. 9A, § 2-101 *et. seq.*

1608.  GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1609.  GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1610.  The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

717

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1611.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1612.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1613.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1614.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1615.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
(VT. STAT. ANN. TIT. 9, § 2451 ET SEQ.)**

1616.   The Vermont Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1617.   The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. TIT. 9, § 2453(a). Defendant's aforementioned conduct violated this statute.

1618.   Defendants are sellers within the meaning of VT. STAT. ANN. TIT. 9, § 2451(a)(c).

1619.   Defendants violated the Vermont CFA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to

mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1620.  Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1621.  Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1622.  Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a. Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b. Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1623.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1624.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1625.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1626.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1627.   The Vermont Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to VT. STAT. ANN. TIT. 9, § 2461(b).  The Vermont Plaintiffs further sue for any other just and proper relief available under the Vermont CFA.

## SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1628.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1629.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

722

Defendants were under a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

1630.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1631.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles. Plaintiffs hereby seek all such damages.

1632.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>VIRGINIA</u>

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1633.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1634.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1635.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1636.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1637.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1638.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1639.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1640.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1641.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in

the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1642.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1643.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1644.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1645.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject

Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1646.  In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1647.  Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1648.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1649.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1650.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Virginia at Va. Code Ann. § 8.1A-101 et. seq.

1651.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1652.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1653.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1654.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries,

requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1655.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.   These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1656.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1657.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.   *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1658.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints

they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1659.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1660. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1661.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein

1662.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1663.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1664.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1665.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.  As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1666.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording

Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1667.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

1668.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

1669.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1670.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1671.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Virginia at Va. Code Ann. § 8.1A-101 et. seq.

1672.   GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1673.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1674.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1675.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1676.   Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1677.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1678.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1679.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
## (VA. CODE ANN. § 59.1-196 ET SEQ.)

1680.   The Virginia Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1681.   The Virginia Consumer Protection Act (Virginia CPA) lists prohibited "practices," which include "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200. Defendant's aforementioned conduct violated this statute.

1682.   Defendants are a "supplier" under VA. CODE ANN. § 59.1-198. 643. Each sale and lease of a Vehicle was a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198.

1683.   Defendants violated the Virginia CPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1684. Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1685.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1686.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

a.  Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.  Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.  Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.  At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.  Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1687.  Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

1688.  These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1689.  As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1690.  As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1691.  Pursuant to VA. CODE ANN. § 59.1-204, the Virginia Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Virginia Plaintiff.

Because Defendant's conduct was committed willfully and knowingly, the Virginia Plaintiffs are entitled to recover, for each plaintiff, the greater of (a) three times actual damages or (b) $1,000.

1692.   The Virginia Plaintiffs also seek punitive damages, attorneys' fees and costs, and any other just and proper relief available under VA. CODE ANN. § 59.1-204 et seq.

**SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS**
**FRAUDULENT CONCEALMENT/FRAUD BY OMISSION**

1693.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1694.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

1695.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1696.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of

purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1697.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## WEST VIRGINIA

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1698.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1699.   Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1700.   GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1701.   The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1702.   The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1703.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective

738

Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1704.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1705.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1706.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1707.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1708.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1709.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1710.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1711.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1712.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The

740

time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1713.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1714.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1715.  Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by West Virginia at W. Va. Code § 46-2-101 et. seq.

1716.  Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have

the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1717.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1718.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1719.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1720.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1721.   As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1722.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1723.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1724.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1725. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to

743

make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

### THIRD CAUSE OF ACTION - AGAINST GM
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1726.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein

1727.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1728.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1729.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time

of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1730.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.   See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1731.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1732.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

745

1733.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

1734.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.   Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1735.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1736.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by West Virginia at W. Va. Code § 46-2-101 et. seq.

1737.   GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1738.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1739.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

746

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1740.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1741.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  See, e.g., In re Chevrolet Bolt EV Battery Litig., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1742.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1743. GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1744. Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
### (W. VA. CODE § 46A-1-101 ET SEQ.)

1745. The West Virginia Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1746. Defendants are a "person" under W. VA. CODE § 46A-1-102(31).

1747. The West Virginia Plaintiffs are "consumers" as defined by W. VA. CODE §§ 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Vehicles.

1748. Defendants engaged in trade or commerce as defined by W. VA. CODE § 46A-6-102(6).

1749. The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." W. VA. CODE § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include:

748

    a.   Advertising goods or services with intent not to sell them as advertised; . . .

    b.   Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

    c.   The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; [and]

    d.   Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive.

W. VA. CODE § 46A-6-102(7). Defendant's aforementioned conduct violated this statute.

    1750.   The West Virginia Plaintiffs seek monetary relief against the Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each West Virginia Plaintiff. Plaintiffs also seek punitive damages against the Defendants because they carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiffs to cruel and unjust hardship as a result.

**SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS**
**FRAUDULENT CONCEALMENT/FRAUD BY OMISSION**

1751.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1752.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

1753.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1754.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1755.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants

an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## WISCONSIN

### FIRST CAUSE OF ACTION - AGAINST GM
### BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")

1756. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1757. Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1758. GM is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1759. The Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1), because they are normally used for personal purposes and Plaintiffs in fact purchased them wholly or primarily for personal use.

1760. The Vehicles were sold with a "written warranty" and/or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1761. Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties as defined in 15 U.S.C. § 2301(6). Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

1762.   The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1763.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1764.   Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1765.   GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1766.   The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1767.  As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of

purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1768.   Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1769.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1770.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1771.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

## SECOND CAUSE OF ACTION – AGAINST GM
## BREACH OF EXPRESS WARRANTY

1772.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1773.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Wisconsin at Wisc. Stat. § 402.101 *et. seq.*

1774.   Plaintiffs' purchase or lease of the subject vehicles was accompanied by express warranties  as defined in 15 U.S.C. § 2301(6).  Specifically, GM provided all purchasers and lessees of the Defective Vehicles with an express written warranty that covered the Vehicles, including but not limited to the battery, and GM warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.  GM also warranted that the Defective Vehicles' high voltage battery pack was free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.  The vehicles were not as warranted and represented in that the vehicles have the battery defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in possession of GM.

1775.   As a result of their many defects, the subject vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

1776.  Plaintiffs have provided GM with sufficient opportunities to repair or replace the subject vehicles.  Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.  Plaintiffs provided GM with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches.

1777.  GM has breached its express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.  GM sold and leased the Defective Vehicles with the Defective Batteries, requiring repair or replacement within the applicable warranty periods, and refused to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Defective Vehicles to be restored to their advertised qualities within a reasonable time.

1778.  The subject vehicles continue to contain defects that substantially impair the use, safety and value of the vehicles.  These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

1779.  As a result of GM's breaches of express warranties, Plaintiffs have suffered damages within the jurisdictional limits of this Court in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

1780.  Plaintiffs each notified GM of its breach within a reasonable time, and/or were not required to do so because affording GM a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations

755

the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1781.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, the filing of the federal class action complaint and directly from consumers, including Plaintiffs.

1782.   Any attempt to disclaim or limit GM's express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because GM knowingly sold a defective product to Plaintiffs.  The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM.  A gross disparity in bargaining power existed between GM and the Plaintiffs because GM knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1783.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because GM has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

**THIRD CAUSE OF ACTION - AGAINST GM**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER  THE**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ.(THE "MMWA")**

1784.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein

1785.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). GM is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). The Defective Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1786.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1787.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1788.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.   *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement")

1789.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.   *See, e.g., In re Chevrolet Bolt EV Battery Litig*., 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.")

1790.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs

1791.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint,

1792.   Plaintiffs are entitled to relief because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## FOURTH CAUSE OF ACTION – AGAINST GM
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1793.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1794.   Plaintiffs' Vehicles constitute "goods" under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Wisconsin at Wisc. Stat. § 402.101 *et. seq.*

1795.   GM is a "merchant" with respect to motor vehicles under the Rhode Island statute.

1796.   GM provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. Defendant impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while being operated.

1797.   The Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Defective

759

Battery can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of Defective Vehicles severely compromised their range and the ease of charging the vehicles.

1798.   Plaintiffs purchased their vehicles from a network of authorized GM dealers, were the intended consumers of the Defective Vehicles and the dealers had no rights under the warranty agreements.   As such, GM is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.,* 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (recognizing "a third-party beneficiary exception to the privity requirement").

1799.   Plaintiffs provided GM with notice of its breaches of warranty within a  reasonable time after they discovered or should have discovered such breaches. Plaintiffs each notified GM of their breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) ("The Court is persuaded that Plaintiffs have alleged enough to establish that it would have been futile to present their vehicles for repair. Plaintiffs have made the sort of representations the Gregorio court suggested would be sufficient: that there is a defect common to all Subject Vehicles; that GM was consistently unable to fix the defect; and that any repairs or mitigation that GM offered were insufficient.").

1800.   In any event, GM knew about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, GM was

760

provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1801.   GM failed to adequately remedy the battery defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1802.   Plaintiffs are entitled to relief under the UCC because GM's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs and diminution in value of the subject vehicles.  Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

**FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**
**VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT**
**(Wis. Stat. § 100.18)**

1803.   The Wisconsin Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

1804.   The Wisconsin Plaintiffs are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

1805.   The Wisconsin Plaintiffs purchased or leased one or more Vehicle.

1806.   The Wisconsin Plaintiffs are "persons" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1).

1807.   The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).  In the course of its business, through its agents, employees, and/or subsidiaries, Defendant violated the Wisconsin DTPA.

761

1808.   Defendants violated the Wisconsin DTPA as a result of their  manufacture and sale of defective batteries and/or defective vehicles and their fraudulent omissions regarding the safety, reliability and electric range of the vehicles, which conduct had the tendency or capacity to mislead.  By failing to disclose and by intentionally concealing the defective batteries and by marketing the electric range of the Chevy Bolt without disclosing that fully charging the vehicles could lead to sudden vehicle fires, Defendants knowingly and intentionally misrepresented and omitted material facts and breached their legal duties.

1809.   Defendants' unfair and deceptive acts or practices occurred repeatedly, systematically and continuously in Defendants' business of manufacturing, distributing, and advertising the sale of vehicles, were capable of deceiving, and did in fact deceive, a substantial portion of the purchasing public, including Plaintiffs, and imposed a serious safety risk on the public.

1810.   Defendants knew that the Vehicles and their batteries suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use of providing safe and reliable transportation. In the course of Defendants' business of manufacturing, distributing, and advertising the sale of the Vehicles and their batteries, Defendants failed to disclose and actively concealed the battery defects as described above.

1811.   Defendants engaged in the following violative acts or practices in the conduct of trade or commerce:

      a.   Representing through their advertising, warranties, and other express representations that the Vehicles and their electric batteries had benefits or characteristics that they did not actually have;

b.   Representing that the Vehicles and their batteries were of a particular standard or quality when they were not;

c.   Advertising the Vehicles and their batteries with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the Vehicles and their batteries;

d.   At the time of the sales or leases to Plaintiffs, Defendants knew or had reason to know that the Vehicles and their batteries  had inherent safety defects as describes above, but Defendants failed to disclose this material information to Plaintiffs;

e.   Failing to reveal material facts which misled Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.   Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.   Failing to provide promised benefits under the warranty, both expressly or implied by operation of law;

h.   Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining the Plaintiffs' specific consent to the waiver.

Defendants' violative practices were specifically designed to induce, and did in fact induce, Plaintiffs to purchase or lease their Chevy Bolt vehicles.

1812.   Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions concerning the Vehicles and their batteries.

763

1813.   These violations were not due to a bona fide error.  Defendants engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous model years of Chevy Bolt vehicles.

1814.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, the Plaintiffs have suffered and will continue to suffer actual damages, including economic damages at the point of sale or lease and/or diminished value of their Vehicles.  Had Plaintiffs known that the Vehicles would be equipped with defective electric batteries, they would not have purchased or leased the Vehicles or would have paid substantially less to purchase or lease them.

1815.   As a result of the defective batteries, the Plaintiffs were harmed and suffered actual damages including loss of use, charging and range limitations, out of pocket expenses, loss of the benefit of the bargain and reduced value of their vehicles.

1816.   The Wisconsin Plaintiffs hereby sue Defendant for actual damages, including economic and non-economic damages (including, without limitation, damages for embarrassment, humiliation, inconvenience, mental anguish and emotional distress) plus punitive damages plus court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2) plus any other just and proper relief available under the Wisconsin DTPA.

### SIXTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT/FRAUD BY OMISSION

1817.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1818.   Defendants made material omissions regarding the Defective Vehicles and their batteries, actively concealed the defective batteries and made material statements of fact that were misleading without disclosure of the true facts regarding the Defective vehicles and their batteries. Among other things, Defendants failed to disclose that the vehicles could only provide the

promised electric range if they were charged to an extent that would render them unsafe and prone to fire.  These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase. Defendants were under  a duty to disclose the battery defects for the reasons set forth in paragraph 140 above, which is incorporated by reference herein.

1819.   Plaintiffs were unaware of the omitted and concealed material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs were justified and Plaintiffs reasonably relied on Defendants' omissions and suffered damages as a result.

1820.   As a result of Defendants' omissions and concealments, Plaintiffs incurred damages including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase or lease, out of pocket costs and/or the diminished intrinsic value of the Defective Vehicles.  Plaintiffs hereby seek all such damages.

1821.   Defendants' acts of fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## **ATTORNEYS' FEES**

1822.   Plaintiffs seek all reasonable and necessary attorneys' fees in this case, which include the following:

a.      preparation and trial of this lawsuit;

b.      post-trial, pre-appeal legal services; and

c.      an appeal to the Sixth Circuit Court of Appeals;

## CONDITIONS PRECEDENT

1823.   All notices and other conditions precedent to Plaintiffs' right to recover herein have been performed or have occurred.

## JURY DEMAND

1824.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a jury trial of this matter and tender the proper jury fee with the filing of this petition.

## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that Defendants be cited to appear and answer herein, and that upon final trial, they recover their actual damages, additional statutory damages, exemplary damages, attorney's fees, costs of court, pre-judgment and post-judgment interest at the highest legal rates, and such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Eric D. Pearson*
Eric D. Pearson
Texas State Bar No. 15690472
Charles L. Miller
Texas State Bar No. 24007677
eric@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 N. State Hwy 161, Ste. 450
Irving, TX 75038
(214) 237-9001
(214) 237-9001 (facsimile)

**ATTORNEYS FOR PLAINTIFFS**

766